No. 2—10—0234
Opinion filed March 14, 2011

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* PARENTAGE OF ALAN JAMES ROCCA and JENNA MARIE ROCCA, Minors | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| | ) | No. 08—F—150 |
| | ) | |
| (Janet M. Lamar, Petitioner, v. Alan Peter Rocca, Respondent-Appellee (Landau and Associates, P.C., Petitioner-Appellant)). | ) ) ) | Honorable Timothy J. McJoynt, Judge, Presiding. |

PRESIDING JUSTICE JORGENSEN delivered the judgment of the court, with opinion.
Justices McLaren and Burke concurred in the judgment and opinion.

**OPINION**

In this paternity action filed under the Illinois Parentage Act of 1984 (Parentage Act) (750 ILCS 45/1 *et seq.* (West 2008)), Eliot A. Landau of Landau & Associates, P.C., petitioned for final attorney fees from his former client, petitioner Janet M. Lamar. On February 10, 2010, the trial court granted Landau's petition for fees from Lamar, but the court dismissed Landau's request for contribution toward those fees from respondent, Alan Peter Rocca. The court denied contribution on the basis that a settlement agreement entered into between Lamar and Rocca after Landau had withdrawn as counsel included a provision waiving all claims for contribution. Landau appeals the court's dismissal of his request for contribution from Rocca. For the following reasons, we reverse and remand.

I. BACKGROUND

On March 17, 2008, Lamar filed a parentage action seeking to establish Rocca as the father of her two children. Landau represented Lamar in the case and, on April 14, 2008, Landau filed a petition for interim attorney fees. In the petition, Landau asserted on Lamar's behalf that Lamar had not been employed since becoming disabled in or about April 2005 and that Rocca owns a jewelry shop and earns over $150,000 per year. The petition alleged that Lamar had insufficient income to pay the legal fees necessary to prosecute the paternity action. In response, Rocca asserted that he earned approximately $125,000 annually. Landau and Rocca's counsel subsequently exchanged correspondence on the interim fees; Rocca's counsel at one point represented that Rocca would contribute toward attorney fees an amount to be agreed upon. Landau sent Rocca's counsel a letter noting that, although Rocca had paid a portion of Landau's requested fees, Landau had not received further payments despite oral assurances that additional payments would be forthcoming.

The petition for interim fees was continued several times. Ultimately, the petition was not heard because, on February 13, 2009, Landau moved to withdraw as counsel. In his motion to withdraw, Landau requested that the court hold hearings to determine his final attorney fees and to assess Rocca's contribution thereto. Further, in his notice of motion, Landau asserted that, on February 26, 2009, there would be "an immediate hearing on the issue of interim attorney's fees based on the petition filed April 14, 2008." On February 26, 2009, the court granted Landau's motion to withdraw. The court did not hold a hearing that day on Landau's interim-fees petition but, rather, granted Landau leave to file a "petition for final fees and contribution within 30 days." Lamar hired replacement counsel.

Less than three months later, on May 4, 2009, the court entered a settlement agreement that had been executed by the parties with the assistance of their counsel (not Landau). The agreement noted Rocca's gross annual income of $125,000. Further, it provided:

> "Attorney's Fees: Each party shall be solely and exclusively responsible for payment of any and all attorney's fees that have been, or will be, incurred by that party. Each party waives any right to a hearing on contribution to fees that he or she may possess against the other."

Landau asserts that, at the time, he had no notice of the parties' execution of the agreement or the court date during which the agreement was entered. The record does not indicate to the contrary.

One month after the settlement agreement was entered, on June 4, 2009, Landau petitioned for final attorney fees. The petition noted that, upon information and belief, Lamar received social security disability benefits and, for the entire 2008 calendar year, had been unemployed. Accordingly, Landau requested an "award in full or a substantial contribution" from Rocca toward Lamar's attorney fees.

Rocca moved to strike and dismiss Landau's postjudgment petition, arguing that it was untimely and that all claims for contribution were waived in the parties' settlement agreement.

On February 10, 2010, the court granted Rocca's motion. First, however, the court rejected the argument that, because Landau's petition was filed more than 30 days after the court's February 26, 2009, order, it was untimely. The court instead found sufficient that it was a final fees petition filed 30 days after entry of the parties' settlement agreement.

The court then found that, in the settlement agreement, the parties waived from one another any contribution toward each other's fees:

"THE COURT: I find that Mr. Landau's fee petition is a contribution fee petition against, not his client, [but] against Mr. Rocca. And I find that that was waived by both Ms. Lamar and Ms. [*sic*] Rocca, and they both had counsel at the time, and that is binding on the parties.

Unfortunately, Mr. Landau wasn't a party to that agreement, but that was Mr. Rocca's and Ms. Lamar's ability to do. They can agree as to how they wish. That to me bars any fee petition for contribution against dad. So I'm going to grant the motion.

\*\*\*

MR. LANDAU: Exception, your honor, under *Lee v. Lee*, [302 Ill. App. 3d 607 (1998)], that's improper?

THE COURT: I'm saying that the parties bargained away the right to file [a] fee petition [for] contribution. I find here the petition against [Rocca] is a contribution [petition], and it's barred by that agreement. That's what I find."

After a proveup, the court found that Landau's request for $18,670.96 in attorney fees was reasonable and entered judgment against Lamar in that amount. Landau appeals.

## II. ANALYSIS

### A. Motions to Strike

We address first the parties' cross-motions to strike. In his response brief on appeal, Rocca asserts that Landau's brief violates Illinois Supreme Court Rule 341 (eff. Mar. 16, 2007), in that his statement of facts contains various, unspecified statements that contain argument and are unsupported by the record. Rocca requests that we dismiss Landau's appeal or strike those portions of his brief that violate Rule 341. Similarly, Landau, in his reply brief, argues that Rocca's response brief violates

Rule 341 with unsupported and/or misleading allegations, and he requests that we strike Rocca's brief and allow him to file a petition for sanctions.

We deny both parties' motions to strike the opposing party's brief. We will disregard those portions of the briefs that we deem to violate Rule 341.

### B. Contribution

The sole issue on appeal is whether the trial court properly concluded that the parties' settlement agreement, in which they waived claims for contribution against one another, could preclude Landau, as Lamar's former counsel, from seeking contribution against Rocca for Lamar's attorney fees. Landau argues that he has a statutory right under section 17 of the Parentage Act (750 ILCS 45/17 (West 2008)) and sections 501, 503, and 508 of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/501, 503, 508 (West 2008)) to seek his fees against any party in the litigation and that his right cannot be contracted away by the parties. Rocca disagrees with Landau's statutory interpretation and further argues that the cases upon which Landau relies do not apply to the Marriage Act as amended in 1997 (see Pub. Act 89—712 (eff. June 1, 1997)). Applying a *de novo* standard of review to this issue of law (*In re Estate of Dierkes*, 191 Ill. 2d 326, 330 (2000) (issue of statutory interpretation subject to *de novo* review)), we conclude that the court's order was improper.

We begin with section 17 of the Parentage Act, which provides that, in a parentage action, the court may order reasonable attorney fees and costs to be paid "by the parties in accordance with the *relevant* factors specified in section 508" of the Marriage Act. (Emphasis added.) 750 ILCS 45/17 (West 2008). However, section 508 of the Marriage Act, which addresses "attorney's fees; client's rights and responsibilities respecting fees and costs," cross-references other sections of the Marriage

Act and, accordingly, consideration of the "relevant" portions thereof as applied to the Parentage Act becomes more complicated. Indeed, one court has referred to the process of turning to the Marriage Act to assess attorney fees and costs under the Parentage Act as a "tortuous path." *In re the Minor Child Stella*, 353 Ill. App. 3d 415, 418 (2004). For the reader's sake, we temporarily forestall a discussion of the Marriage Act's specific provisions. Instead, having noted that the two statutes are interrelated for purposes of our analysis, we address first three cases that Landau argues support his position that the parties could not unilaterally waive his ability to petition for contribution.

In the first case, *Heiden v. Ottinger*, 245 Ill. App. 3d 612 (1993), this court considered an attorney's request to declare void a settlement agreement provision requiring the parties to be responsible for their own attorney fees. There, the mother had filed a paternity action and, during the litigation, her attorney petitioned for interim fees. The father was ordered to pay the mother a portion of her existing fees. Later, her attorney filed another petition for fees. However, the mother and the father agreed to a settlement drawn up by his counsel, which included a provision that each party would pay his or her own fees. The next day, the mother discharged her attorney and, two days later, the settlement agreement was entered by the trial court without the mother's former attorney's knowledge.

After his efforts to vacate the settlement were rejected, the mother's former attorney appealed. On appeal, we rejected the father's argument that, because the mother's former attorney was not a party to the lawsuit, the former attorney should not be permitted to prolong the litigation by pursuing fees from the father after the parties had settled and the attorney had been discharged. *Id.* at 614. In considering "a discharged attorney's right to pursue his former client's adversary for fees after the suit had settled," we questioned whether the attorney had such an interest in the payment of his fees that

the mother could not unilaterally decide which party would pay. *Id.* at 617. We noted that section 17 of the Parentage Act does not limit which portions of section 508 of the Marriage Act are to be considered in assessing fees and that section 508 permits attorneys to obtain judgments in their own names. *Id.* at 616. Further, we noted that the reason that an attorney generally has standing to maintain a claim for fees is that he or she is a party in interest with respect to the fees. *Id.* at 618. While recognizing that a client has an "absolute right" to settle his or her case without his or her attorney's consent, we found that, under the facts of the case, there appeared to be a concerted effort to deprive the mother's former attorney of his fees; specifically, the record reflected that the mother would not be able to pay her attorney and that the mother settled her case and agreed to a settlement drawn up by the father's attorney *before* discharging her attorney and without his knowledge. *Id.* at 616-20. We ultimately decided that, given the "egregious" facts of the case, we did not need to decide whether, in a "usual case" where parties "pursue only their own best interests," parties may settle the issue of attorney fees when they settle their dispute. *Id.* at 618-19. We declared void the settlement agreement's provision requiring each party to pay his or her own fees. *Id.* at 620

Next, in *Lee v. Lee*, 302 Ill. App. 3d 607 (1998), the court considered a former attorney's ability to seek contribution from an opposing party after the parties had settled their claims. Specifically, the wife in a dissolution action discharged her attorney and hired replacement counsel. Later, former counsel petitioned for final fees. Apparently, before that petition was heard, the wife and her new counsel executed with the husband a marital settlement agreement that included a provision that each party would be responsible for his or her own fees. At a proveup on the settlement agreement, former counsel objected to the fees provision and the wife testified that, while she did not dispute his fees, she could not afford to pay them. The trial court entered the settlement agreement

and later rejected former counsel's argument that, under *Heiden*, the wife's agreement to pay her own fees could not limit counsel's right to seek such fees from the husband. Instead, the court found that the settlement was clear and unequivocal and was freely entered into by the parties with assistance of counsel.

On appeal, the court disagreed, focusing on two subsections of section 508 of the Marriage Act "as it existed when the fee petitions were pending before the circuit court." *Id.* at 612. Noting that the principal purpose of section 508 is to shift liability for attorney fees from one party to the other, the court recognized that the Marriage Act thereby diminishes any advantage that one spouse might have over the other due to a disparity in financial resources and, accordingly, equalizes the parties' positions before the court. *Id.* The court noted that section 508 also allows the award of fees *directly* to the attorney, who may enforce the order and judgment in his or her own name, and that, although fees are generally awarded to the client, "they 'belong' to the attorney, who has standing to pursue an action for fees as the party in interest, without the participation of the client or former client." *Id.*[1] The court continued:

---

[1] See also *In re Marriage of Baltzer*, 150 Ill. App. 3d 890, 893 (1986), explaining that "[t]he attorneys for the litigants in a dissolution proceeding are considered as parties in interest in an action for attorney fees to the extent that while such fees are generally awarded to the client, they properly 'belong' to the attorney." Moreover, the court in *Baltzer* noted that, as a party in interest, the attorney therefore has standing to pursue an action for fees and that section 508 of the Marriage Act authorizes an attorney in a pending dissolution proceeding to recover his earned fees from *either* his own client or *the other party*. *Id.* at 893-94.

"The fee-shifting provisions of section 508, coupled with the court's ability to award fees directly to the attorney, provide an incentive for attorneys who might otherwise decline to represent spouses with few financial resources of their own. Thus, the attorney's right to proceed against the other spouse for an award of fees is oftentimes essential to a spouse's ability to procure legal representation.

We conclude, therefore, that a marital settlement agreement that purports to allocate attorney fees will not, as a general rule, extinguish the statutory right of a spouse's prior attorney to pursue an award of fees from the other spouse. Were we to hold otherwise, access to representation by many spouses would be seriously compromised and with it, the integrity of dissolution of marriage proceedings. We are cognizant that each party has the primary obligation to pay his or her own attorney fees. [Citations.] However, the reality is that many spouses would be unable to secure representation if the possibility that the attorney could seek fees from the other spouse could be so easily foreclosed by the parties." *Id.* at 612-13.

The court concluded that the settlement agreement did not deprive the wife's former counsel of the right to pursue a fee award against the husband and it likened former counsel to a third-party creditor. *Id.* at 613-14. In closing, the court noted that it expressed no opinion as to whether its holding would extend to fee disputes arising under the "Leveling of the Playing Field in Divorce Litigation Amendments," effective June 1, 1997, through Public Act 89—712 (1997 amendments). *Id.* at 614.

Finally, in *Stella*, 353 Ill. App. 3d at 420-21, the court recognized that the policy considerations underlying the Marriage Act's attorney fee provisions apply equally to Parentage Act cases. The court considered whether interim fees, made available to attorneys under the 1997

amendments to the Marriage Act, are also available to attorneys in proceedings brought under the Parentage Act. In concluding that they are, the court noted that a "fundamental reason" for the 1997 amendments permitting an interim-fee system was to "prevent a party from using his or her relative wealth as a litigation tool." (Internal quotation marks omitted.) *Id.* at 420. The court noted that the Parentage Act and the Marriage Act address overlapping issues, such as custody, child support, guardianship, and visitation. *Id.* Therefore, the court reasoned, it would not have escaped the legislature's attention that allowing interim fees in both dissolution and parentage actions would result in similar public policy benefits, including "encouraging attorneys to undertake parentage actions." *Id.*

We agree with Landau that the foregoing cases strongly suggest that the Parentage Act and the "relevant" provisions of section 508 of the Marriage Act provide him with a right to seek contribution from Rocca that could not unilaterally be waived by Lamar. Rocca, however, argues that Landau's reliance on *Heiden* and *Lee* is misplaced. Specifically, Rocca argues that, in *Heiden* and *Lee*, the courts considered the Marriage Act as it existed prior to the 1997 amendments. Whereas section 508(a) of the Marriage Act previously provided only *generally* for attorney fees, the 1997 amendments, Rocca asserts, entirely altered the processes for seeking attorney fees in dissolution cases. Prior to 1997, section 508(a) provided:

"The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order any party to pay *** reasonable *** attorney's fees necessarily incurred or, for the purpose of enabling a party lacking sufficient financial resources to obtain or retain legal representation, expected to be incurred by any party, which award shall be made in connection with the following ***." 750 ILCS 5/508(a) (West 1996).

After the 1997 amendments, section 508(a) provided:

> "(a) The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order any party to pay a reasonable amount for his own or the other party's costs and attorney's fees. Interim attorney's fees and costs may be awarded from the opposing party, in accordance with subsection (c—1) of Section 501. At the conclusion of the case, contribution to attorney's fees and costs may be awarded from the opposing party in accordance with subsection (j) of Section 503. Fees and costs may be awarded to counsel from a former client in accordance with subsection (c) of this Section. Awards may be made in connection with the following ***." 750 ILCS 5/508(a) (West 1998).[2]

---

[2] We note that section 508 of Marriage Act was amended again in 2010 (2010 amendments). See Pub. Act 96—583 (eff. Jan. 1, 2010). Rocca asserts that the Marriage Act, as altered by the 2010 amendments, technically applies to the court's February 2010 order. Upon review, the 2010 amendments, as compared to the 1997 amendments' addition of a detailed statutory scheme, made relatively minor changes to the attorney fee provisions that are relevant here. The "modest" changes sought to clarify provisions included in "1997's complete over-haul of the fee provisions, commonly known as the 'Leveling of the Playing Field Law.' " *Attorney Fees in Domestic Relations Cases: The 2009 Amendments to "Leveling of the Playing Field,"* 98 Ill. B.J. 136 (March 2010). Those amendments do not alter our analysis, which ultimately concerns whether *Heiden* and *Lee* remain applicable despite the Marriage Act's subsequent provision of a comprehensive scheme for attorney fee recovery. As such, we will hereafter cite the most recent version of the statute, which was in effect when the court rendered its order.

Rocca notes that the 1997 amendments included additional provisions, such as additions to section 508(c) and other sections of the Marriage Act, to govern recovery of interim fees, procedures for obtaining contribution, and the timing for seeking and recovering fees—in effect, an entirely new scheme for availability and recovery of attorney fees. Therefore, Rocca argues, the cases preceding the amendments are not only factually distinguishable but are inapplicable given the new scheme. Based on the current statutory structure, Rocca contends, the trial court here properly disregarded *Heiden* and *Lee* because various provisions of the Marriage Act plainly provide only a party, not an attorney, with a right to petition for contribution. Thus, he argues, the court did not err in concluding that Landau did not possess the right to seek contribution from Rocca after he was discharged from the case and the parties had settled their claims.

Essentially, by arguing that the Marriage Act provides only clients with the ability to seek contribution, Rocca suggests that, at any time and regardless of the amount of work performed in litigating a client's claims, an attorney who is discharged by a financially disadvantaged client lacks recourse to obtain contribution toward the fees incurred during the representation. Instead, such recourse lies entirely within the client's control, to either pursue or waive. In our view, *Heiden* and *Lee* clearly stand against this proposition. Accordingly, Rocca's argument cannot succeed merely on the basis that the aforementioned cases arrived at their conclusions based upon an earlier version of the statute. Rather, to succeed, Rocca must show that *Heiden* and *Lee* are inapplicable because the amendments altered the statute such that an attorney's ability to pursue contribution is now restricted in a manner that did not exist when the statute was considered by those courts. He fails to do so. Upon addressing Rocca's arguments regarding the plain language of the statute and considering the

purpose of the 1997 amendments, we conclude that Rocca's position that the Marriage Act presently precludes Landau's claim for contribution is incorrect and that *Heiden* and *Lee* remain good law.

Rocca specifically focuses on three statutory provisions for his arguments: section 508(a), section 508(c), and section 503(j) of the Marriage Act. We address each in turn. First, we disagree that the Marriage Act on its face prohibits Landau from seeking contribution against Rocca after the parties waived contribution. We read a statute to effectuate the legislature's intent and, to do so, look first to the plain language of the statute. *Michigan Avenue National Bank v. County of Cook*, 191 Ill. 2d 493, 504 (2000). In relevant part, section 508(a) of the Marriage Act provides that the court may, after considering the parties' financial resources, order any party to pay a reasonable amount for his own *or the other* party's costs and attorney fees. Pub. Act 96—583 (eff. Jan. 1, 2010). Moreover, "*contribution* to attorney's fees and costs may be awarded from the opposing party in accordance with subsection (j) of Section 503 and in any other proceeding under this subsection."[3] (Emphasis added.)

---

[3]As noted by Landau in his reply brief, we remain mindful that section 17 of the Parentage Act requires only that, in awarding costs or fees, a court comply with the *relevant* provisions of section 508 of the Marriage Act. In the 2010 amendments, the legislature changed subsection (a) to provide that interim-fee hearings may be summary only if the proceeding is a prejudgment dissolution proceeding, *i.e.*, interim-fee hearings in parentage actions will now be evidentiary. See Pub. Act 96—583 (eff. Jan. 1, 2010); see also *Attorney Fees in Domestic Relations Cases: The 2009 Amendments to "Leveling of the Playing Field,"* 98 Ill. B.J. 136 (March 2010). The 2010 amendments also amended the sentence addressing contribution to provide that, "[a]t the conclusion of any *pre-judgment dissolution* proceeding ***, contribution *** may be awarded *** in accordance with subsection (j) of section 503 *and in any other proceeding under this subsection.*" Pub. Act

*Id.* Further, fees and costs may be awarded in any proceeding to counsel from a former client in accordance with section 508(c). *Id.* Finally, section 508(a) notes that the court may order that the award of attorney fees and costs, including a contribution award, shall be paid *directly* to the attorney, who may enforce the order in his or her name. "Except as otherwise provided in subdivision (e)(1) of this Section, subsection (c) of this Section is exclusive as to the right of any counsel (or former counsel) of record to petition a court for an award and judgment for final fees and costs during the pendency of a proceeding under this Act." *Id.*

Therefore, section 508(a) clearly contemplates: (1) contribution of fees from one party to another party; (2) a contribution award that is payable directly to the attorney and that the attorney may personally enforce; and (3) that a former attorney may petition for final fees. However, those terms, which arguably provide attorneys broader rights to seek contribution than did the Marriage Act when considered in *Heiden* and *Lee*, are conditioned upon other sections of the statute, and it is those sections upon which Rocca bases his arguments.

Rocca next turns to section 508(c), which concerns "[f]inal hearings for attorney's fees and costs against an attorney's *own client*, pursuant to a Petition for Setting Final Fees and Costs of either a counsel or a client." (Emphasis added.) *Id.* As relevant here, Rocca looks to subsection (c)(2)(iii), which provides that no final hearing on a petition for final fees against one's own client is permitted

96—583 (eff. Jan. 1, 2010). Therefore, it is unclear whether "in any other proceeding," *i.e.*, a nondissolution proceeding, contribution awards must follow section 503(j)'s parameters. If not, Landau asserts, section 503(j) is not "relevant" for Parentage Act claims. We need not decide the issue. Even if section 503(j) applies, we conclude below that, here, it did not bar Landau's petition for contribution.

unless "judgment in any contribution hearing on behalf of the client has been entered or the right to a contribution hearing under subsection (j) of Section 503 has been waived." *Id.* In accordance with the foregoing, Rocca asserts that section 508(c) provides that resolution of the issue of contribution is a condition precedent to a hearing on an attorney's petition for final fees against a former client. Here, he asserts that Landau's petition properly failed because: (1) no hearing on contribution occurred; and (2) to conclude that a former attorney could still seek fees against the opposing party despite a "contribution waiver" would render meaningless subsection (c)(2)(iii)'s permitting a client to waive his or her right to a contribution hearing. In other words, he argues that the right to waive a contribution hearing is the same as waiving contribution and, as subsection (c)(2)(iii) gives that right to the client, it is rendered meaningless if a former attorney may nevertheless demand contribution.

We reject Rocca's interpretation for four reasons. First, it appears that Rocca mistakes the subsection's contemplation of a waiver of a contribution *hearing* for waiver of contribution itself. Waiving a contribution hearing does not necessarily equate to waiving contribution. We presume that parties might waive a contribution hearing when one party *agrees* to contribute a set amount or, conversely, when there is no question that, because of a party's financial situation, contribution to his or her fees is inappropriate.

Second, Rocca's condition-precedent argument suggests that, if an attorney filed a contribution petition and, while it remained pending, the client discharged the attorney, the attorney could seek neither contribution nor final fees because the hearing was never held. This appears contrary to the purpose of "leveling the playing field"; an attorney would likely be reluctant to represent a financially disadvantaged client if, upon the client's whim, contribution could be rendered unavailable, even after a petition for contribution was filed. Rather, the purpose of subsection (c)(2)(iii) is to provide that,

if contribution will be sought, it shall be sought prior to the final fee hearing and be determined in a separate hearing. This is to avoid a conflict of interest that might arise if an attorney, while representing his or her client, simultaneously sought contribution from the opposing party and sought his or her own fees from (and thereby essentially suing) the client. See David H. Hopkins, *"Leveling the Playing Field" in Divorce: Questions and Answers about the New Law*, 85 Ill. B.J. 410 (1997). Thus, waiving a contribution hearing under section 503(j) does not equal waiving contribution.

Third, we reject Rocca's suggestion that, because there was no contribution hearing, Landau's petition for final fees could not be heard, because the parties, in their settlement agreement, *did* in fact waive a contribution *hearing*. Therefore, even under Rocca's interpretation, the condition precedent to considering Landau's petition for final fees was, in fact, satisfied. Fourth, and finally, we briefly note that section 508(c) pertains to an attorney seeking fees from his or her former client. As the issue here involves Landau seeking fees from the opposing party, section 508(c) is therefore arguably not relevant at all (again, section 17 of the Parentage Act requires application of only relevant section 508 factors).

Rocca thirdly argues that sections 508(a) and (c) condition contribution upon the terms provided by section 503(j). Section 503 generally provides for the disposition of property in a dissolution action. Pub. Act 96—583 (eff. Jan. 1, 2010). In subsection (j), section 503 provides, in relevant part, that, after proofs have closed and before judgment is entered, "a party's petition for contribution to fees and costs incurred in the proceeding shall be heard and decided" and:

> "(3) The filing of a petition for contribution shall not be deemed to constitute a waiver
> of the attorney-client privilege between the *petitioning party* and current or former counsel
> ***. ***

\*\*\*

(5) A contribution award (payable to *either* the *petitioning party* or the party's *counsel*, or jointly, as the court determines) may be in the form of either a set dollar amount or a percentage of fees and costs (or a portion of fees and costs) *to be subsequently agreed upon by the petitioning party and counsel* or, alternatively, thereafter determined in a hearing pursuant to subsection (c) of Section 508 or previously or thereafter determined in an independent proceeding under subsection (e) of Section 508." (Emphases added.) *Id.*

Rocca asserts that Landau's attempt to obtain contribution necessarily fails because section 503(j)'s distinction between a "petitioning party" and "counsel" reflects that only a party may serve as a petitioner for contribution. Further, Rocca asserts that section 503(j), by permitting a contribution award to be determined in accordance with an agreement by counsel and the client regarding total fees due, contemplates that a *former* attorney proceeding on a final petition would be bound by a prior determination with respect to contribution—here, the settlement agreement.

Again, assuming that section 503(j) is relevant here, we disagree. While section 503(j) appears to present the petitioner as a party, as opposed to an attorney, the Marriage Act clearly anticipates that an attorney will, at times, act as a petitioning party, as evidenced by section 508(a)'s provision that any counsel or former counsel may petition the court for an award and judgment and may enforce the order in his or her own name. Further, even to the extent that the statute is read to distinguish between a petitioning party and an attorney, it fails to address the problem faced here—namely, that the former client, who would have served as the "petitioning party" under section 503(j), purports to unilaterally waive contribution toward fees that actually belong to her former attorney. See *Lee*, 302 Ill. App. 3d at 612 (although generally awarded to the client, attorney fees belong to the attorney).

Finally, we reject Rocca's interpretation that a former attorney is bound by a settlement agreement entered prior to his or her petition for final fees where the former attorney was not a party and in no way consented to that agreement. We do not read section 503(j) to mean that a former attorney is bound by a client's subsequent agreement with other parties with respect to the former attorney's fees. When interpreting a statute, we presume that the legislature did not intend absurdity. *In re Estate of Wilson*, 238 Ill. 2d 519, 560 (2010). Instead, the suggestion under section 503(j) that a former attorney would be bound by a prior agreement regarding total fees presumably applies to situations where, unlike here, the former attorney was a *party* to an agreement with the client or opposing party regarding the fees that he or she incurred on the client's behalf.

In sum, we reject Rocca's statutory analysis. The foregoing provisions of the Marriage Act do not plainly preclude Landau's claim so as to render inapplicable *Heiden* and *Lee*. In fact, it is apparent from the enhanced statutory scheme provided by the 1997 amendments that, by including, for example, specific provisions permitting interim fees and contribution, the effect of the amendments was to *expand* the avenues for attorneys to obtain fees and to encourage attorneys to represent even those clients who are financially disadvantaged. Contribution toward the financially disadvantaged party's attorney fees from the party with superior finances permits an attorney to represent a client through lengthy litigation proceedings with the knowledge that his or her client will not be solely responsible for paying the attorney's fees. Indeed, in *Stella*, a post-1997-amendments case, the court pointed to the policy behind the 1997 amendments as supporting its conclusion that, like in dissolution cases, attorneys in Parentage Act cases must be encouraged to undertake such actions. *Stella*, 353 Ill. App. 3d at 420-21.

Rocca, however, finally argues that another purpose of the amendments was to avoid conflicts of interest between attorneys and their clients by providing that contribution petitions and petitions for final fees should be considered in separate proceedings. He contends:

"Undoubtedly, it is a conflict of interest between the client and his former attorney if, after the client agreed with the opposing party to be responsible [for] his or her own fees, the former counsel nevertheless seeks fees against the opposing party. Such a blatant disregard of the client's litigation decisions benefits only the attorney: if a contribution waiver can be defeated by an attorney's claim for fees, such a waiver is meaningless and would have no effect or influence in the litigation."

We submit that this might be true if the attorney pursuing contribution was involved in or at least had knowledge of, and thereby consented to, the waiver. But that is not the case here. As in *Heiden* and *Lee*, Landau was a former attorney who, the parties knew, had pursued his client's interests, incurred fees in doing so, petitioned for contribution, and corresponded with Rocca and his counsel regarding contribution; however, he was not informed of the settlement agreement and its waiver provision prior to its entry. We reject, under the facts of this case, Rocca's argument that Landau's failure to seek final fees within 30 days of his withdrawal rendered the court and the parties unaware that he was seeking contribution to his fees. The record reflects that Landau petitioned for interim fees on April 14, 2008, that Landau requested a hearing on final fees and contribution when he withdrew, and that, on February 26, 2009, he filed a final petition that requested an immediate hearing on contribution. Further, we note that Lamar presumably knew whether she owed Landau fees, whether she had paid them, and whether she was able to pay them. In fact, the record suggests that Lamar had been unemployed and receiving disability payments. As such, when the parties

purported to waive any rights to contribution, they and their counsel were aware that Lamar had former counsel who possessed claims to fees and had requested contribution thereto.

In sum, and as previously mentioned, attorney fees, while awarded to the client, actually belong to the attorney. *Lee*, 302 Ill. App. 3d at 612. While a party may settle his or her claims, a party cannot waive something that belongs to someone else. There is nothing about the 1997 amendments to the Marriage Act that suggests that the holdings in *Heiden* and *Lee* were altered. Accordingly, we reverse the trial court's order dismissing Landau's petition for contribution on the basis that the parties waived contribution in their settlement agreement. The cause is remanded for the trial court to consider Landau's petition for contribution toward the $18,670.96 in fees that the court found reasonable.

### III. CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Du Page County is reversed and the cause remanded.

Reversed and remanded.