# Illinois Official Reports

## Appellate Court

---

*In re Parentage of Rocca*, 2013 IL App (2d) 121147

---

| | |
|---|---|
| Appellate Court Caption | *In re* PARENTAGE OF ALAN JAMES ROCCA and JENNA MARIE ROCCA, Minors (Janet M. Lamar, Petitioner, v. Alan Peter Rocca, Respondent-Appellee (Landau and Associates, P.C., Petitioner for Fees-Appellant)). |
| District & No. | Second District<br>Docket No. 2-12-1147 |
| Filed | December 11, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from the trial court's rulings on remand concerning issues of attorney fees and sanctions sought by petitioner's counsel, the trial court did not abuse its discretion in denying the request of petitioner's counsel for contribution toward counsel's fees from respondent and the trial court's denial of the request of petitioner's counsel for supplemental and appellate attorney fees and his motion for sanctions against respondent were upheld. |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, No. 08-F-150; the Hon. Timothy J. McJoynt, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Eliot A. Landau, of Landau & Associates, P.C., of Woodridge, for appellant. |
| | |
| | Barry A. Schatz, of Berger Schatz, of Chicago, for appellee. |
| | |
| Panel | JUSTICE JORGENSEN delivered the judgment of the court, with opinion.<br>Justices Hutchinson and Zenoff concurred in the judgment and opinion. |

**OPINION**

¶ 1    This case returns to us after our remand in *In re Parentage of Rocca*, 408 Ill. App. 3d 956 (2011). In this appeal, attorney Eliot Landau, on behalf of Landau & Associates, P.C., appeals the trial court's decisions on remand to: (1) both hold a contribution hearing and deny contribution; (2) deny Landau's petitions for supplemental and appellate attorney fees; and (3) deny Landau's motion for sanctions. For the following reasons, we affirm.

¶ 2                                    I. BACKGROUND

¶ 3    The facts underlying this dispute were set forth in our prior decision. *Rocca*, 408 Ill. App. 3d at 956-58. In sum, the prior appeal concerned Landau's petition for contribution toward attorney fees he charged while representing petitioner, Janet Lamar, in a parentage action. Specifically, on February 13, 2009, after having notified the parties and the court of his intent to seek attorney fees and contribution thereto, Landau withdrew as counsel for Lamar. After a proveup hearing at which Lamar did not appear, the trial court awarded Landau $18,670.96 in attorney fees. Prior thereto, however, the court dismissed Landau's petition for contribution toward those fees from respondent, Alan Peter Rocca, on the basis that, after Landau withdrew, Lamar and Rocca had entered into a settlement agreement that included a provision wherein each party agreed to be responsible for his or her attorney fees and waived "any right to a hearing on contribution to fees" against the other.

¶ 4    Landau, on behalf of Landau & Associates, P.C., appealed (the law firm was the sole appellant). We reversed the court's dismissal of the contribution petition. *Id.* at 970. We noted that the settlement agreement was entered into after Landau had withdrawn as counsel and without his knowledge or consent, despite the fact that Landau's intent to seek fees and contribution was known before the parties settled. *Id.* at 969. We noted case law reflecting

that attorney fees, while often awarded to the party, actually belong to the attorney and that parties may not conspire to deprive attorneys of a fair fee by entering into a settlement agreement waiving contribution. *Id.* at 960-63 (citing *Heiden v. Ottinger*, 245 Ill. App. 3d 612 (1993), *Lee v. Lee*, 302 Ill. App. 3d 607 (1998), *In re Marriage of Baltzer*, 150 Ill. App. 3d 890 (1986), and *In re Minor Child Stella*, 353 Ill. App. 3d 415 (2004)). Further, we rejected Rocca's arguments that the 1997 amendments to the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/508 (West 1998)) invalidated those decisions, and we noted that: (1) contrary to Rocca's argument, section 503(j) of the Marriage Act (750 ILCS 5/503(j) (West 2008)), if applicable to a parentage action, did not bar Landau's contribution petition; (2) the parties could not waive something that belonged to someone else; and (3) "[w]aiving a contribution hearing does not necessarily equate to waiving contribution. We presume that parties might waive a contribution hearing when one party *agrees* to contribute a set amount or, conversely, when there is no question that, because of a party's financial situation, contribution to his or her fees is inappropriate." (Emphasis in original.) *Rocca*, 408 Ill. App. 3d at 966. We concluded that the court erred in dismissing Landau's contribution petition under the settlement agreement, and we reversed and remanded "for the trial court to consider Landau's petition for contribution toward the $18,690.96 in fees that the court found reasonable." *Id*. at 970.

¶ 5 In light of our decision, on remand, Rocca moved for a contribution hearing. Rocca interpreted our decision as requiring the court to "consider" contribution, and he argued that he was entitled to examine the reasonableness of the requested fees for which he might now be ordered to contribute. Landau, however, objected. Landau noted that this court specifically distinguished between waiving contribution and waiving a contribution hearing. He argued that, because this court did not expressly remand for a "contribution hearing," we had, essentially, already determined that the attorney fees were reasonable and that contribution should, in fact, be awarded–possibly for the entire fee judgment. Further, Landau argued that Rocca, by virtue of his waiver in the parties' settlement agreement, was not entitled to a contribution hearing. The trial court disagreed that we had concluded that contribution must be awarded for the full amount of the fee judgment, which would, in essence, require no "consideration." Instead, it determined that we remanded for "consideration" of the erroneously dismissed contribution petition and that our decision did not preclude a hearing on that issue.

¶ 6 On June 13, 2012, the trial court held a section 503(j) final contribution hearing. Despite notice, various efforts to secure Lamar's presence failed, and she did not appear. The court asked Landau if he wished to proceed in Lamar's absence, and Landau stated that he did. Landau testified to the reasonableness of the fees that formed the basis of the $18,670.96 judgment, he requested that the court take judicial notice of the file (which it did), and he rested. Rocca moved for a directed finding, arguing primarily that Landau did not establish either the reasonableness of his fees or Lamar's inability to pay them. The court granted the motion. It noted that Rocca had stipulated that he could afford to contribute to the fee award. Nevertheless, it found that "[t]he evidence with regards to Ms. Lamar's current economic status is non existent. *** I can't presume she's still how she was two years ago when a

- 3 -

pleading was filed and said then she was on disability. The court has to hear current information as to her economic circumstances." Further, it noted that it heard no evidence about what, if anything, Lamar had paid on the fee judgment. In sum, the court found that, because Landau had not established Lamar's relative inability to pay fees, he had not further established that contribution was appropriate.

¶ 7     Also on remand, Landau filed two new petitions for fees. First, he filed a supplemental petition, requesting $22,372.27 in fees against Lamar (again, his former client) and contribution toward those fees from Rocca. Landau alleged that those fees included the fees from the original petition, plus those fees incurred while defending against Rocca's motion to dismiss the original petition. Second, Landau petitioned for $13,857.61 in fees against Lamar and for contribution toward those fees from Rocca, for fees he incurred pursuing the initial appeal. The trial court granted Rocca's motions to strike the fee petitions, agreeing with Rocca that, as Landau had withdrawn as counsel and as those petitions sought judgment against both Lamar and Rocca, Landau was not representing Lamar but, rather, was representing himself. The court noted that Lamar was not involved in the appeal, that at the time of the appeal she was represented by other counsel, and that Landau pursued the appeal "on his own accord." It noted that nothing in the Marriage Act gives "a right to an attorney who doesn't represent either party to pursue an appeal and then make those parties pay for the appeal. Nothing." The court noted that Landau's basis for seeking appellate and supplemental fees–by asserting that, to some degree, it could benefit Lamar if contribution thereto were awarded–was akin to "post-withdrawal representation" of a client, which, it determined, finds no basis in the Marriage Act. The court continued that the Marriage Act does not give a "former lawyer a cause of action or a right to sue [his] clients for appellate fees that he prosecuted on his own." Landau objected, noting, "it was your order which the Appellate Court overturned that necessitated our pursuing the appeal."

¶ 8     Finally, the court denied Landau's motion for sanctions against Rocca's counsel under Illinois Supreme Court Rule 137 (eff. Feb. 1, 1994). In sum, Landau argued that Rocca and his counsel misled the court on various legal issues, including those giving rise to the initial and instant appeals. Further, he argued that Rocca and his counsel deliberately misinterpreted our mandate on remand. The court denied Landau's motion for a variety of reasons, but it noted that the case had been "sharply practiced" all along. It did not find the arguments frivolous or made for the purpose of harassment.

¶ 9     Landau's motions to reconsider the court's various rulings were denied. He appeals.

¶ 10                                  II. ANALYSIS
¶ 11                     A. Contribution Proceedings on Remand
¶ 12     Landau argues first that, on remand, the trial court failed to follow this court's decision. He argues that our decision noted the difference between waiving contribution and waiving a contribution hearing and that, therefore, because Rocca waived a contribution hearing in the parties' settlement agreement, the court erred in holding one on remand. Further, Landau contends that the court erred in relying on section 503(j) to deny contribution, because this

- 4 -

court allegedly held that section 503(j) is inapplicable to a parentage proceeding. Finally, Landau argues that the court erred by requiring Lamar's personal appearance and testimony to establish her inability to pay, where her inability to pay was already established elsewhere in the record and where Rocca had stipulated that he could pay. For five reasons, we disagree.

¶ 13    First, our decision held that Landau's contribution petition was improperly dismissed and should be considered on remand. We did not purport to find that the fees awarded were reasonable or that Rocca should be ordered to contribute to them. We simply held that the court should "consider" the petition for contribution toward the fees previously awarded. *Rocca*, 408 Ill. App. 3d at 970. The trial court did not err in finding that a hearing would be appropriate for it to consider the petition, whereas awarding contribution outright in the full amount of the fee judgment would require no consideration whatsoever. As such, our holding did not preclude the trial court from holding a hearing to consider whether contribution was appropriate.

¶ 14    Second, while Landau is correct that our prior opinion distinguished between contribution and a contribution hearing, he ignores the context in which we did so. In the initial appeal, Rocca argued that the contribution petition was properly dismissed because, by waiving a contribution hearing, Lamar waived contribution. We disagreed that the two were necessarily the same, and we provided examples where that might not be the case, such as where one party agreed to contribute a certain amount to the other party's fees. *Id.* at 964-69. However, our caution that waiving a hearing does not necessarily reflect a waiver of contribution is not, as Landau uses it here, a distinction that precludes a hearing when a trial court must "consider" a contribution petition.

¶ 15    Third, and similarly, we disagree that Rocca's waiver of a contribution hearing in his agreement with Lamar served to waive a hearing when *Landau* pursued contribution. The agreement provided that the parties waived a right to "a hearing on contribution to fees that *he or she may possess against the other*." In our prior decision, we did not hold that Landau stood in Lamar's shoes, such that Rocca's waiver of a hearing applied to Landau's pursuit of contribution. To the contrary, by virtue of holding that Lamar could *not* waive something that belonged to Landau, we distinguished between Lamar and Landau. In other words, the very fact that Landau was not a party to the agreement was one of the bases for our decision that the trial court should not have dismissed his contribution petition. The trial court properly declined to flip that proposition on its head to find Rocca's waiver of a contribution hearing, entered into only with Lamar, nevertheless barred him from seeking a hearing upon remand.

¶ 16    Fourth, we did not hold that section 503(j) does not apply to parentage actions. Rather, our prior decision noted that section 503(j)'s application to parentage actions is unclear, and we simply rejected Rocca's argument that, *if it applied*, section 503(j) precluded Landau's ability to petition for contribution. *Id*. at 965 n.3, 968. The distinction is that we did *not* hold that the trial court could not rely on section 503(j)'s factors to ultimately deny contribution.

¶ 17    Fifth, and finally, the trial court did not err where it denied contribution on the basis that there was no evidence presented regarding Lamar's current financial circumstances. The trial court's determination whether one party should pay the other party's attorney fees lies within

its sound discretion. *In re Marriage of Keip*, 332 Ill. App. 3d 876, 884 (2002). Section 503(j), if applicable, requires that a court considering contribution must consider the factors provided by section 503(d) (750 ILCS 5/503(d) (West 2008)) for the division of marital property. 750 ILCS 5/503(j) (West 2008). Those provisions include an assessment of the economic circumstances of *both* parties. See, *e.g.*, 750 ILCS 5/503(d)(5), (d)(8), (d)(11) (West 2008). Further, even if section 503(j) does not apply to a parentage action, it is well established that, before ordering one party to pay the other party's attorney fees, there must be evidence showing that the party who incurred fees is unable to pay. See *Keip*, 332 Ill. App. 3d at 884.

¶ 18 Here, Lamar did not appear to present evidence and Landau did not present evidence on her behalf or in her stead. Again, when it was apparent that Lamar was not going to appear, the court asked Landau if he wished to proceed and Landau elected to do so. We disagree that asking the court to take judicial notice of the entire file was sufficient to inform the court as to Lamar's current financial circumstances and ability, if any, to pay the attorney-fee judgment. Landau notes that, 11 months prior to the contribution hearing, Lamar's most recent counsel filed a fee petition and included a July 19, 2011, affidavit from Lamar reflecting disability payments as her sole source of income. However, the fact that the affidavit existed in the file, regarding an issue with which Landau had no involvement, did not suffice as presenting evidence to establish that Lamar needed contribution from Rocca to pay her fees. Although Rocca stipulated that he could afford to contribute, the court noted that, because no evidence had been presented, it did not even know if Lamar had paid any, if not all, of the fee judgment and it could not, therefore, assess whether and in what amount Rocca's contribution was needed. In sum, we cannot conclude that the court abused its discretion in denying contribution.

¶ 19 **B. Petitions for Supplemental and Appellate Fees**

¶ 20 Landau argues next that the trial court erred where it denied his: (1) supplemental petition for attorney fees (for the period from his withdrawal from the case on February 26, 2009, through the court's dismissal of the contribution petition on February 10, 2010); and (2) petition for fees incurred pursuing the successful appeal. He argues, with respect to both petitions, that the court ignored Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994), which provides that proceedings on appeal are a continuation of the original proceedings, and, accordingly, that he could, per this court's decision, seek fees against Lamar and contribution thereto from Rocca for the supplemental and appellate fees. Landau disagrees that he pursued the appeal on his own behalf.

¶ 21 Preliminarily, to the extent that Landau suggests that this court's prior opinion commented on his ability to seek fees and contribution thereto for work performed after he withdrew as Lamar's counsel, he is incorrect. Our decision held only that the trial court had erroneously dismissed Landau's petition for contribution toward final fees, which encompassed his work on Lamar's behalf up until his withdrawal. We did not comment on fees incurred prosecuting the contribution petition or on appellate fees, as neither were before us.

¶ 22　　　Further, we conclude that the trial court did not abuse its discretion in denying the supplemental and appellate fee petitions. At issue here is Landau's right to pursue fees and contribution from Lamar and Rocca for actions he performed *after* his withdrawal as Lamar's counsel. The relevant statutory provisions do not support Landau's position that such recovery is permissible. Specifically, section 17 of the Illinois Parentage Act of 1984 (750 ILCS 45/17 (West 2008)) provides that the court may order reasonable attorney fees and costs to be paid by the parties in accordance with the relevant provisions of section 508 of the Marriage Act (750 ILCS 5/508 (West 2008)). Section 508 provides generally that fees and costs may be awarded to counsel in connection with the enforcement or modification of any order or judgment under "this Act," as well as for the "prosecution of any claim on appeal (if the prosecuting party has substantially prevailed)." 750 ILCS 5/508(a)(2), (a)(3.1) (West 2008). Attorney fees and costs may be awarded directly to the attorney, who may enforce the judgment in his or her name. 750 ILCS 5/508(a) (West 2008). Although these provisions support Landau's position that, generally, fees may be awarded for a successful appeal, and they are part of what gave Landau, who was neither a party himself nor representing a party on appeal, standing to appeal, they do not reflect that a former attorney has a right to collect fees and costs for actions taken *after* he has withdrawn and the petition for final fees and costs has been decided.

¶ 23　　　Indeed, the Marriage Act provides that fees and costs may be awarded to counsel from a *former* client only in accordance with section 508(c), which fails to speak to this issue. Section 508(c)(1) provides that no petition for fees and costs against an attorney's own client may be filed unless the attorney has withdrawn or has moved to withdraw. 750 ILCS 5/508(c)(1) (West 2008). Section 508(c)(2) provides that no final hearing against an attorney's own client may be held unless their written engagement agreement satisfies certain requirements and is attached to counsel's affidavit, judgment in any contribution hearing on behalf of the client has been entered, and "the petition seeks adjudication of all unresolved claims for fees and costs between the counsel and the client." 750 ILCS 5/508(c)(2) (West 2008). Further, section 508(c)(2) explains that the relief requested under a petition for setting final fees and costs constitutes a distinct cause of action, such that a pending but undetermined petition will not affect the appealability of any judgment or adjudication in the original proceeding. *Id.* Finally, section 508(c)(3) provides that the determination of reasonable final fees and costs under section 508(c) lies in the trial court's discretion. 750 ILCS 5/508(c)(3) (West 2008). Thus, section 508(c) does not *directly* speak to the issue before us. Nevertheless, it appears that section 508(c)(2) contemplates that a final fee petition is just that–a final fee petition for a hearing wherein all fees counsel intends to seek for work done *on the client's behalf* must be adjudicated. It does not expressly contemplate recovery for actions counsel undertakes subsequent to termination of the attorney-client relationship.

¶ 24　　　We understand Landau's frustration that, here, the contribution petition was erroneously dismissed immediately prior to entry of judgment on his final fee petition. It is from that erroneous decision that he successfully appealed. However, when the contribution petition was dismissed and the appeal was taken, Landau was no longer acting as Lamar's counsel. Indeed, while Landau's interest in the fees he incurred when representing Lamar in the

parentage action is what gave him standing to pursue the appeal on behalf of Landau & Associates, P.C., as "petitioner for fees-appellant" (see, *e.g.*, *Rocca*, 408 Ill. App. 3d at 960-63; *Baltzer*, 150 Ill. App. 3d at 893-94), at that time, his representation of Lamar had ceased: he had withdrawn and she was represented by new counsel. His actions were not pursued in an attempt to represent Lamar's interests in the parentage action. In fact, the parentage action was over, as the parties had settled the action, and Lamar had nothing to do with the appeal. Indeed, the record is silent on whether Lamar even knew of the appeal. Theoretically, she could have opposed it. To hold that Landau can nevertheless recover from Lamar and Rocca for the fees he incurred after his representation ceased would permit recovery for, as the trial court put it, "post-withdrawal representation," a relationship for which we have no authority.[1]

¶ 25    Permitting counsel to collect fees and pursue contribution from a former client and the opposing party for actions not taken on the client's behalf, *i.e.*, not during the course of the attorney-client relationship, would arguably be inconsistent with the purpose of permitting the collection of fees and contribution thereto in a parentage action. Although the general rule is that all parties are responsible for their own fees, the goal of permitting contribution is to help a financially disadvantaged party obtain counsel and prevent him or her from being "outlitigated" by a party with superior resources. See *Stella*, 353 Ill. App. 3d at 420; *Lee*, 302 Ill. App. 3d at 612-13. As such, and as we held in our prior opinion, a party may not unilaterally waive or conspire with the other side to deprive his or her former counsel's right to pursue, for the work done on his or her behalf, fees and contribution thereto. However, once the attorney has been discharged or has withdrawn and where, as here, the parties have *settled* the underlying parentage action and the former client has new counsel, the former counsel's subsequent pursuit of fees and contribution for work done after the relationship has ended cannot be deemed to be on the client's behalf.

¶ 26    None of the cases Landau cites are contrary to our conclusion. For example, Landau relies on *Heiden*, 245 Ill. App. 3d 612, where a former attorney appealed the parties' settlement agreement that barred the attorney from pursuing contribution. However, we do not know if, on remand, that former attorney was allowed to seek fees and contribution for the costs on appeal. The same holds true for *Baltzer*, 150 Ill. App. 3d at 893-96, and *Lee*, 302 Ill. App. 3d at 614. Other cases Landau cites, for the proposition that a trial court has authority to grant appellate fees after termination of the appeal, concern situations where the *client*, not the attorney, was the party to the appeal and there existed an attorney-client relationship when the fees were incurred; moreover, some of those cases also note that the trial court must still decide whether awarding fees incurred on appeal would be "equitable under all circumstances." *White v. White*, 41 Ill. App. 3d 758, 763 (1976); see also *In re*

---

[1]Our conclusion does not depend on whether the attorney-client relationship ceased because of a withdrawal or a termination: either way, when there is only a former client, an attorney cannot charge him or her for actions taken after the relationship ends. In contrast, where there is no end of the attorney-client relationship, fees the attorney charges to successfully appeal an erroneous decision would constitute fees incurred on the client's behalf for which recovery might be sought in a final fee petition.

*Marriage of Baylor*, 324 Ill. App. 3d 213, 216 (2001); *In re Marriage of Stockton*, 169 Ill. App. 3d 318, 328-29 (1988); *Sidwell v. Sidwell*, 102 Ill. App. 3d 56, 59-61 (1981); *Gilmore v. Gilmore*, 74 Ill. App. 3d 831, 834-35 (1979); *Sherman v. Sherman*, 74 Ill. App. 3d 451, 454 (1979); *Fox v. Fox*, 56 Ill. App. 3d 446, 449-50 (1978).

¶ 27     We agree with Landau that, generally, an appeal is a continuation of the underlying proceeding, not the commencement of a new case, and that the collection cases Rocca cites are not exactly on point (*e.g.*, *In re Marriage of Tantiwongse*, 371 Ill. App. 3d 1161 (2007)) because they concern direct collection actions by attorneys against former clients and do not involve contribution claims. Nevertheless, the overarching principle in such cases, *i.e.*, that a former attorney appealing in his own interest cannot obtain fees for doing so, is persuasive. We note again that one premise of our prior decision was that Landau's interest could not be waived by the parties, and he appealed because his former client and the opposing party, coupled with the court's ruling, essentially wronged him. In this sense, Landau was like any other plaintiff, pursuing his own interest. Landau argues that he continued to represent Lamar in the sense that he also served her interests by seeking contribution from Rocca toward the fees she owed. Merely because Landau's position might have aligned with Lamar's interests does not mean that his position was taken on her *behalf*.[2] In sum, we do not find error in the trial court's dismissal of the supplemental and appellate fee petitions.

¶ 28                               C. Rule 137 Sanctions
¶ 29     Landau's final argument on appeal is that the court erred in denying his request for Rule 137 sanctions against Rocca and his counsel. We disagree.

¶ 30     Rule 137 is penal and must be strictly construed. *Mohica v. Cvejin*, 2013 IL App (1st) 111695, ¶ 47. A trial court's decision regarding sanctions will not be reversed absent an abuse of discretion. *Id*. This is because "generally the conduct at issue occurred before the judge issuing the sanctions, who, therefore, is in the best position to determine whether the challenged conduct warranted penal sanctions or because the trial court heard testimony from individuals involved in the challenged conduct." *Id.* ¶ 50. The party seeking Rule 137 sanctions bears the burden to establish that the opposing party made false allegations without reasonable cause. *Mikulecky v. Bart*, 355 Ill. App. 3d 1006, 1014 (2004).

¶ 31     Landau essentially argues that sanctions should be imposed because Rocca and his counsel allegedly misrepresented legal authority in an attempt to sabotage and frustrate Landau's ability to recover fees. We cannot conclude that the trial court abused its discretion

---

[2]Landau argues that contribution is in Lamar's interest because it would decrease the amount of the fee judgment against her. However, it is not clear whether, based on the settlement agreement's provision that Lamar be responsible for her own fees, Rocca could then seek to collect, for any contribution amount he was ordered to pay, reimbursement from Lamar. Accordingly, given the possibility that, instead of being required to pay the full judgment to Landau, contribution in these circumstances might result only in Lamar paying part of the judgment to Landau and reimbursing part to Rocca, the record does not clearly reflect that Landau's actions inherently would have benefitted Lamar.

in rejecting this argument. First, it is clear from the record that the issues in this case were hotly contested and that both parties have lost arguments along the way. In fact, while we rejected Rocca's arguments in our initial appeal, we have, in this decision, rejected many of Landau's arguments. In doing so, we have accepted many of the arguments Landau challenges as sanctionable. The point is that a losing argument does not always equate to a frivolous one. See *Polsky v. BDO Seidman*, 293 Ill. App. 3d 414, 428 (1997) (a court "should not impose sanctions on a party who presents objectively reasonable arguments for his position, regardless of whether the arguments are deemed to be unpersuasive or incorrect"). Second, the trial court was in the best position to determine whether the arguments proffered by Rocca and his counsel exceeded the bounds of propriety such that Rule 137 sanctions should be awarded. We will not reverse the court's exercise of discretion on that issue.

¶ 32                                      III. CONCLUSION

¶ 33        For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

¶ 34        Affirmed.