THIRD DIVISION
November 14, 2007

No. 1-05-3972, 1-06-0108,1-06-0531, 1-06-1665, Consol.

| | | |
|---|---|---|
| *In re* MARRIAGE OF ELISABETH NESBITT, | ) | Appeal from the |
| | ) | Circuit Court of |
| Petitioner-Appellee, | ) | Cook County. |
| | ) | |
| and | ) | No. 01D4596 |
| | ) | |
| BRUCE NESBITT, | ) | The Honorable |
| | ) | Raymond A. Figueroa, |
| Respondent-Appellant. | ) | Judge Presiding. |

JUSTICE GREIMAN delivered the opinion of the court:

Petitioner Elisabeth (Lisa) Nesbitt and respondent Bruce Nesbitt married in 1993. On March 22, 2001, Lisa filed a petition for dissolution of marriage. The parties entered into an agreed order allocating, between themselves, the majority of their marital property and reserving the issues of maintenance and attorney fee contribution for adjudication in the trial court. After Lisa filed a petition for contribution to attorney fees and costs, the trial court conducted a hearing on the matter and both parties filed written closing arguments on the issue. Lisa subsequently filed a motion for Rule 137 (155 Ill. 2d R. 137) sanctions against Bruce, asserting that the arguments advanced in his written closing argument were not grounded in fact or law. Bruce responded with a motion to strike Lisa's motion for sanctions. The trial court ultimately ordered Bruce to contribute $700,000 toward the attorney fees incurred by Lisa and granted Bruce's motion to strike Lisa's motion for sanctions. Both parties appealed and we have consolidated the appeals. On appeal, Bruce asserts the trial court erred when it entered an order requiring him to

contribute toward his wife's attorney fees because the trial court was unable to determine with precision whether all of the work performed by Lisa's firm was reasonable. Lisa, in turn, asserts the trial court erred when it struck her motion for sanctions and allocated the proceeds of a 401(k) plan entirely to Bruce. We affirm as modified.

Lisa and Bruce, both divorcees, met in 1991. Lisa was a psychotherapist with an established private practice while Bruce was the founder and sole shareholder of a company that specialized in applying a coating to various products including cookware. They married on June 19, 1993. In 1994, the couple purchased a penthouse apartment in Chicago located on top of a rental building and acquired a time-share interest in a condominium located in Aspen, Colorado. At Bruce's request, Lisa closed her private practice to supervise renovations to the penthouse and became a "corporate wife." She also commenced a career as an artist, although it failed to prove profitable. In 1997, Bruce acquired interests in two additional companies.

On March 20, 2001, Lisa filed a petition for an order of protection following a physical altercation that took place in Aspen. According to the petition, Bruce struck her and her brother while they were on a skiing vacation. The petition also alleged that Bruce had inflicted verbal, psychological, and physical abuse on Lisa during the course of their marriage. The trial court granted Lisa's petition and issued an emergency order of protection on the same date. Pursuant to the terms of the order, Bruce was prohibited from entering or remaining at their Chicago apartment. She filed a petition for dissolution of marriage two days later.

Thereafter, the parties engaged in discovery. Lisa filed a number of motions to compel Bruce to comply with discovery requests. On January 23, 2004, Lisa and Bruce entered into an

No. 1-05-3972, 1-06-0108,1-06-0531, 1-06-1665, Consol.

agreed order, allocating the major components of the marital estate between them. Pursuant to the terms of the order, the trial court found that Bruce received approximately $2,672,621 in marital property, which was approximately 61% of the marital estate and Lisa received $1,695,746 in marital property, approximately 39% of the marital estate. In addition, Bruce's nonmarital estate was valued at $3,351,612 while Lisa's nonmarital estate was valued at $619,454. The parties reserved the issues of maintenance and contribution to attorney fees for adjudication in the trial court.

On June 14, 2004, Lisa filed a petition for contribution to attorney fees and costs under the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/101 et seq (West 2004)). The petition alleged that Lisa incurred $1,109,103.09 in attorney fees and costs and that all of the work performed by her firm, Schiller, DuCanto, & Fleck, was reasonable. Lisa had paid $227,024.71 toward the outstanding balance; however, the petition alleged that Bruce was in a better financial position to contribute and pay for Lisa's attorney fees because her estate would be exhausted should she have to pay the entirety of the costs incurred throughout the dissolution proceedings. Attached to the petition was the affidavit of David H. Hopkins, the attorney primarily responsible for providing services to Lisa. He averred that "much of the work carried out by [his firm] *** was necessitated by Bruce's misconduct or, alternatively, by baseless and harassing tactics initiated by him, including defiance of court orders." Affixed to Hopkins' affidavit were billing statements, which consisted of a listing of dates and the amount of fees charged for the work performed on those dates.

Bruce filed his response to Lisa's petition for contribution to attorney fees and costs on

3

August 11, 2004, denying that he had a greater ability to contribute to Lisa's litigation costs and that her "litigation costs were needlessly driven up by him." He also asserted as an affirmative defense that the attorney fees charged by Lisa's firm were excessive and unreasonable.

Lisa filed two supplemental petitions for attorney fees. The first supplemental petition was filed on October 29, 2004, and contained "additional charges for Schiller, DuCanto & Fleck's services over the June-September 2004 period" totaling $111,784.05. She filed her second supplemental petition on April 1, 2005, which contained "additional charges for Schiller, DuCanto & Fleck's services over the October-December 2004 period" totaling $228,779.64. Attached to both supplemental petitions were billing statements containing a list of dates, a description of the work performed on those dates, the initials of the person who performed the work, the hourly rate charged, and the total number of hours of work performed.

The trial court held a hearing on the issue of contribution. David Hopkins, the attorney at Schiller, DuCanto & Fleck, primarily responsible for representing Lisa, testified that his firm prepared and sent 37 bills to Lisa during the course of the litigation. Pursuant to firm policy, the billing statements sent to clients contain a list of tasks performed on a given day as well as the total amount of time spent on those tasks per day. The time allocated to each individual task does not appear on the billing statement. Hopkins testified that at his firm, attorneys, law clerks, and paralegals are required to maintain records of the work they perform on specific cases. The employees complete handwritten time sheets, which are then input into a computer to produce billing records for the client. Schiller, DuCanto & Fleck does not require its employees to assign a time component to each task performed for a client throughout the day; rather, an employee

may aggregate the time for all of the work performed on a given day. While some associates itemize their time sheets, these itemizations are eliminated when billing records are sent to the client. Hopkins testified that Illinois law does not require billing statements to itemize the time spent per task and that doing so would be difficult because sometimes it is "impossible to draw lines of demarcation between this task and that task."

Hopkins was questioned in detail about the billing statements produced in the Nesbitt case. He discussed the work performed by various members of his firm on specific days and discussed the benefits that Lisa received from their work. Hopkins conceded that the litigation charges in the Nesbitt case were "overwhelmingly high when compared to [Lisa's] share of the marital estate," but explained that the amount of legal fees incurred was the direct result of the complexities and unique circumstances of the case. He testified that time and money were spent assigning value to unique assets, including the Nesbitt's penthouse, Bruce's three businesses, and Bruce's racing car collection. In addition, the firm was forced to file a number of motions to compel Bruce to comply with discovery requests. Finally, the firm also spent time tracking several ancillary legal proceedings that had the potential to impact the marital estate, including a Colorado criminal case in which Bruce was the defendant, a wrongful termination suit in which Bruce was the defendant, and a legal malpractice suit initiated by Bruce against the attorney who initially represented him in the dissolution proceedings. In Hopkins' opinion, all of the work billed by his firm was fair and reasonable.

Elizabeth Theyssen, an associate at Schiller, DuCanto & Fleck, also performed substantial work on Lisa's case. She testified that she billed Lisa approximately $267,000 for her services.

She was not told to itemize her billing statements and break down the time spent on each task; rather, the firm permitted her to list the work she performed and provide one number indicating the total amount of time she spent on all of the combined tasks. Occasionally, on some of her handwritten time sheets, she did provide time allotments for individual tasks; however, some tasks "couldn't be broken out." She was questioned about various billing entries and provided explanations for the work she performed on the Nesbitt case.

Sarane Sierworth, head of the appellate department at Schiller, DuCanto & Fleck, also worked on the Nesbitt case, billing $36,828.50 for her services. "[F]or the most part," when Sarane completes her handwritten time sheets, she itemizes the work she performs and assigns individual time periods to each task. Her itemizations are eliminated when billing statements are issued to the client. She explained the work she had done on the case and the rationale behind her work.

Howard Rosenfeld and his firm, Rosenfeld, Hafron, Shapiro & Farmer, were initially retained by Bruce to represent him in the divorce proceedings. The firm represented Bruce from March 2001 until August 20, 2003. Rosenfeld testified that Bruce "was very angry at Lisa because he had been thrown out of his house. *** He was very angry and very upset." During the course of representation, Rosenfeld had "no specific recollection of anything that [Schiller, DuCanto & Fleck] did that [he] would consider to be unreasonable." Bruce ultimately terminated Rosenfeld because he was "not aggressive enough in representing Mr. Nesbitt." Rosenfeld and his firm filed suit against Bruce to recover $76,580.80 in unpaid attorney fees. Bruce subsequently filed a suit against Rosenfeld individually as well as his firm.

Attorney Francis Gembala, an attorney at Nadler, Pritikin & Mirabelli, testified that Bruce retained his firm's services in August 2003.  He testified that Bruce "wanted to achieve a fair and just result in the dissolution of his marriage" and characterized Bruce as a "very cooperative client."  During the course of his representation of Bruce, he found many of Schiller, DuCanto & Fleck's discovery requests to be redundant.

Attorney James Pritikin, a principal partner at Nadler, Pritikin & Mirabelli, also classified Bruce as a "cooperative" client who "facilitated discovery."  While he conceded that he believed "this case was unnecessarily litigious," he cast blame on both parties.  According to Pritikin, Bruce was "[n]o more litigious than Mrs. Nesbitt."

Lisa testified that following the hearing in which the trial court issued an order of protection, Bruce told her, "Now you have just entered into a full, scale battle with me.  I will spend every last dollar on attorney's fees and there will be nothing left for you."  She denied that she had the financial ability to pay for her legal fees.  Starting in 2004, Lisa began seeking employment in the mental health field.  Though she attended three interviews, she has been unable to find employment.  She has sold some of her artwork, however, earning slightly over $10,000.  She has not used any of the proceeds of her art sales to pay her attorney fees.

Bruce denied threatening to spend the entire marital estate on attorney fees.  Rather, he claimed he had tried to settle all of the financial matters "from the beginning."  However, he conceded that in a settlement proposal generated in 2001, he wrote, "If Lisa chooses not to come to a reasonable agreement as set forth below, we can simply go to court and have a full, blown out litigation slash war."  Bruce testified that he possesses an interest in three companies and

7

receives a yearly salary. In addition, he generates additional income from renting advertisements on a billboard. While his income in previous years totaled over $1,000,000, his gross income in 2004 was only "a little under $400,000."

Following the conclusion of the testimony, the parties filed written closing arguments. In her closing argument, Lisa requested a contribution award totaling $988,385. She argued that Bruce's conduct increased her litigation costs, citing his refusals to settle, his refusal to comply with discovery requests, and his physical abuse. Lisa maintained that while Bruce had the financial ability to pay her litigation costs, she did not, and requiring her to pay for her own attorney fees "would simply destroy her basic financial condition." Finally, Lisa argued that while her firm may have engaged in "bundled billing," this should not impact a contribution award because the court is not required to inspect billing statements before ordering contribution and the testimony provided at trial essentially unbundled the statements and showed that all of the fees incurred were reasonable.

In his closing argument, Bruce maintained that Lisa should be required to pay for her own fees because both parties were equally litigious. In addition, he argued that Lisa failed to prove that all of the fees she incurred were reasonable.

On July 20, 2005, Lisa filed a motion for sanctions under Supreme Court Rule 137 (155 Ill. 2d R. 137). The motion cited various instances in Bruce's written closing argument that were conclusory and argumentative and were in violation of Rule 137 because they were not "well grounded in fact" or "warranted by existing law." Bruce responded with a motion to strike Lisa's motion for sanctions pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS

8

5/2-619 (West 2004)). In his motion, Bruce asserted that Rule 137 does not apply to arguments submitted in a written closing argument. The trial court, "having reviewed the pleadings and listened to the argument of counsel and being otherwise fully informed," granted Bruce's motion to strike Lisa's motion for Rule 137 sanctions. Lisa filed a motion to reconsider, which the trial court denied.

Regarding the issue of contribution, the trial court issued an order on September 2, 2005, in which it made the following findings: (1) Bruce received a significantly greater share of the marital estate; (2) Bruce possessed a greater ability to earn income; (3) Bruce's financial position was "far superior to [Lisa's]" and he "is able to contribute to her attorneys fees without jeopardizing his economic well-being"; (4) Lisa testified credibly that "Bruce told her that he would '...spend every last dollar on attorneys fees and there will be nothing left for you'"; (5) it entered nine orders as a result of Bruce's failure to comply with discovery requests; and (6) "Bruce's attorneys charged him only $650,000." Though the trial court noted, "[i]t is impossible to tell with precision whether all the work performed by [Lisa's firm] was reasonable, because time entries were 'bundled' into a single total of hours for a given day, even if multiple tasks were done on that day," it found it had a "detailed understanding of what work was done and why" as a result of the "exhaustive hearing on the fee issue." Ultimately, the court ordered Bruce to contribute $700,000 to Lisa's attorney fees because "Bruce holds a financial position far superior to [Lisa's] and is well able to help defray her fees, and because the Court believes that Bruce protracted the litigation out of sheer vindictiveness."

The trial court entered a Judgment of Dissolution of Marriage on the same date, which

incorporated the contribution order, distributed the remainder of the marital property, and ordered that Lisa be paid time reviewable maintenance in the amount of $5,000 per month for three years. The trial court entered supplemental judgment on December 12, 2005, and an amended supplemental judgment on January 26, 2006. Bruce filed a total of four notices of appeal, while Lisa filed four notices of cross-appeal. We have consolidated their appeals and will consider each of their claims in turn.

On appeal, Bruce asserts that the trial court erred in ordering a $700,000 contribution award to Lisa because it could not determine with precision whether all of the work performed by Lisa's attorneys was reasonable. According to Bruce, the trial court's inability to determine with precision whether all of the work performed was reasonable "should have resulted in a denial of all of the fees requested in [Lisa's] contribution petition."[1]

Initially, we must determine the proper standard of review. As a general rule, the trial court's decision to award fees is a matter of discretion and will not be disturbed on appeal absent an abuse of discretion. In re Marriage of Schneider, 214 Ill. 2d 152, 174 (2005). Bruce, however, maintains his appeal raises an issue of law to which we should apply de novo review. Pietrzyk v. Oak Lawn Pavilion, Inc., 329 Ill. App. 3d 1043, 1046-47 (2002). We disagree. Whether or not the trial court erred in ordering a contribution award after considering the fees the petitioner incurred is reviewed under an abuse of discretion standard. In re Marriage of Hasabnis, 322 Ill. App. 3d 582, 597-98 (2001). Keeping this standard in mind, we address the merits of

---

[1]Both parties agree that while Bruce raised a number of issues in his notices of appeal, this is the only claim he chose to argue on appeal. Accordingly, Bruce's other claims are waived.

No. 1-05-3972, 1-06-0108,1-06-0531, 1-06-1665, Consol.

Bruce's appeal.

As a general rule, attorney fees are the responsibility of the party who incurred the fees. In re Marriage of Berger, 357 Ill. App. 3d 651, 662 (2005); In re Marriage of Suriano, 324 Ill. App. 3d 839, 852 (2001). Section 508 of the Act, however, allows for contribution to attorney fees "where one party lacks the financial resources and the other party has the ability to pay." Schneider, 214 Ill. 2d at 174. Prior to 1997, section 508 was the sole provision in the Act that governed attorney fees incurred during marriage dissolution actions. Effective June 1, 1997, section 508(a) was amended and currently provides:

> "The court from time to time, after due notice and hearing, and
> after considering the financial resources of the parties, may order any party
> to pay a reasonable amount for his own or the other party's costs and
> attorney's fees. *** At the conclusion of the case, contribution to
> attorney's fees and costs may be awarded from the opposing party in
> accordance with subsection (j) of Section 503." 750 ILCS 5/508(a) (West
> 2004).

Section 503(j), in turn provides:

> "After proofs have closed in the final hearing on all other issues
> between the parties (or in conjunction with the final hearing, if all parties so
> stipulate) and before judgment is entered, a party's petition for contribution to fees
> and costs incurred in the proceeding shall be heard and decided, in accordance
> with the following provisions:

11

No. 1-05-3972, 1-06-0108,1-06-0531, 1-06-1665, Consol.

***

> (2) Any award of contribution to one party from the other party shall be based on the criteria for division of marital property under this Section 503 and, if maintenance has been awarded, on the criteria for an award of maintenance under Section 504."  750 ILCS 5/503(j)(2) (West 2004).

Though not explicitly required by section 503(j), we have found that contribution awards under that section must be reasonable.  Hasabnis, 322 Ill. App. 3d at 596 ("Section 503(j) does not expressly require the award of fees be reasonable, but since we cannot envision a grant of legislative authority that tells judges to be unreasonable, we read the statute as incorporating a reasonability requirement").  Bruce, relying primarily on our holding in Hasabnis, argues on appeal that "the trial court's finding–that it is impossible to tell with precision whether all the work performed was reasonable–should have resulted in a denial of all of the fees requested in [Lisa's] contribution petition," because such a finding is necessary to award contribution under section 503(j) of the Act.  We disagree.

In Hasabnis, we considered a challenge to a contribution award ordered by the trial court. The respondent asserted that the trial court erred when it held that the Act did not require it to make a determination as to reasonableness and necessity of the petitioner's attorney fees.  We held that section 503(j) of the Act does not expressly require the trial court to consider the necessity of the petitioner's fees; however, it did "incorporat[e] a reasonability requirement." Hasabnis, 322 Ill. App. 3d at 596.  To determine a reasonable contribution award, the trial court must consider the marital property criteria under section 503 and, if maintenance is awarded, the

12

maintenance criteria under section 504. Hasabnis, 322 Ill. App. 3d at 596. We found that "[i]n most cases," a review of these factors alone will be enough for the trial court to determine a contribution award. Hasabnis, 322 Ill. App. 3d at 596. While a trial court may review the petitioning party's billing records, it is not required to do so. Hasabnis, 322 Ill. App. 3d at 596-97. We recognized that the Second District in In re Marriage of DeLarco, 313 Ill. App. 3d 107 (2000), had held that the trial court " 'must,' in making an award of fees pursuant to a contribution petition, 'consider whether the attorney fees charged by the petitioning party's attorney are reasonable.' " Hasabnis, 322 Ill. App. 3d at 597, quoting DeLarco, 313 Ill. App. 3d at 114. However, we cautioned that to critically examine the reasonableness of a petitioner's attorney fees would be inconsistent with the goals of section 503(j), which is to preserve the attorney-client privilege and to avoid conflicts of interest. Hasabnis, 322 Ill. App. 3d at 597. Nevertheless, because the trial court had considered the petitioner's attorney fees as well as the relevant factors outlined in section 503(j), we upheld the contribution award. Hasabnis, 322 Ill. App. 3d at 597-98.

Similarly, in this case, whether or not consideration of the reasonableness of a petitioner's attorney fees is required, the trial court clearly did so. The court conducted an extensive hearing where much of the testimony concerned the reasonableness of Lisa's attorney fees. Three attorneys who provided legal services to Lisa provided detailed testimony about the work they performed and the benefits Lisa received as a result of their assistance. In addition, unlike in Hasabnis, Lisa's billing statements were produced as were some of the handwritten time sheets kept by two of her attorneys. Thus, the trial court in this case engaged in a much more thorough

13

analysis of the petitioner's attorney fees than did the trial court in <u>Hasabnis</u>. In addition, the trial court's order reflected that it also considered the marital property criteria under section 503 and the maintenance criteria under section 504. The court found especially relevant the fact that Bruce received a greater share of the marital estate (section 503(d)(3), section 504(a)(1)) and that he had greater ability to earn income (section 503(d)(11), section 504(a)(2)). Accordingly, because the trial court considered the reasonableness of Lisa's attorney fees as well as the relevant property distribution and maintenance criterion in fashioning Lisa's contribution award, we find no abuse of discretion. <u>Hasabnis</u>, 322 Ill. App. 3d at 597-98.

We do not find that the trial court's inability to determine "with precision" whether all of work performed by Lisa's attorneys was reasonable because the billing statements generated by her firm were bundled, such that the time for all the work performed by an attorney was aggregated into one daily total, warrants a contrary result. Neither <u>Hasabnis</u> and <u>DeLarco</u> nor any of the other cases cited by Bruce supports his position that the trial court, after considering the fees incurred by the petitioner, may not award contribution absent a finding that all of the fees incurred by the petitioner are reasonable. <u>Hasabnis</u> is particularly instructive, because although the record revealed that the trial court had considered the petitioner's fees when it held a hearing and heard testimony from the petitioner's attorney, there is no evidence that the court made any finding as to the reasonableness or unreasonableness of her fees, and we upheld the contribution award. <u>Hasabnis</u>, 322 Ill. App. 3d 597-98. Moreover, in <u>In re Marriage of Broday</u>, 256 Ill. App. 3d 699 (1993), another case cited by Bruce, we found that the trial court may, absent a finding that all of work performed and fees charged are reasonable, "reduce a fee award to an amount

which it considers reasonable based on the knowledge it acquires in the discharge of its duties." Broday, 256 Ill. App. 3d at 707; see also Kaiser v. MEPC American Properties, Inc., 164 Ill. App. 3d 978, 988-89 (1987) (upholding a reduced attorney fee award, which the trial court ordered after considering the time records, the standards to be applied in determining a fee award, and its own experience to determine the reasonableness of the fees requested).

Accordingly, although the trial court was unable to "tell with precision whether all of the work performed by [Schiller, DuCanto & Fleck] was reasonable" based on the "'bundled'" billing records, it was not required to make such a finding prior to ordering contribution. See Hasabnis, 322 Ill. App. 3d at 597-98; Broday, 256 Ill. App. 3d at 707-08; Kaiser,164 Ill. App. 3d at 988-89. Following the "exhaustive hearing on the fee issue," the trial court had a "detailed understanding of what work was done and why" and applied the knowledge it gained to order a reduced contribution award, ordering Bruce to contribute $700,000 instead of the $988,358 requested by Lisa. Based on these facts, we find no abuse of discretion, and accordingly, and uphold Lisa's contribution award.

In so holding, we reject Bruce's argument that a decision upholding Lisa's contribution award would be inconsistent with the holdings of In re Marriage of Keip, 332 Ill. App. 3d 876 (2002), and In re Marriage of McGuire, 305 Ill. App. 3d 474 (1999). In both cases, the Fifth District held that section 503(j) of the Act "codifies the standard criteria" that courts had previously used in fashioning contribution awards. Keip, 332 Ill. App. 3d at 884; McGuire, 305 Ill. App. 3d at 478. Both cases cited the allocation of assets and liabilities, the existence of a maintenance award, and the earning potential of the parties as examples of the criteria employed

15

by courts to award contribution. Keip, 332 Ill. App. 3d at 884; McGuire, 305 Ill. App. 3d at 478-79. Bruce, relying on Keip and McGuire, apparently maintains that a critical examination of a petitioner's billing records and an express finding as to the reasonableness of the petitioner's fees are also examples of the standard criteria used by courts in contribution cases. Neither Keip nor McGuire, however, identified the underlying reasonableness of the petitioner's attorney fees as one of the standard criteria employed by courts to award contribution or evaluated the reasonableness of the petitioner's fees in reviewing the contribution award. Keip, 332 Ill. App. 3d at 884-85; McGuire, 305 Ill. App. 3d at 479-80. Accordingly, we do not find that Keip or McGuire warrants a contrary result.

We next turn to the claims raised in Lisa's cross-appeal. Lisa first asserts that the trial court erred when it granted Bruce's motion to strike her motion for Rule 137 (155 Ill. 2d R. 137) sanctions. She maintains that her motion was not a pleading and that Bruce's motion to strike, which was filed under section 2-619 of the Code, applies only to pleadings. Accordingly, she contends that we must remand to the trial court for briefing and an evidentiary hearing on her motion.

Initially, we note Lisa maintains that although Bruce's motion to strike specified that it was brought under section 2-619 of the Code (735 ILCS 5/2-619 (West 2004)), the content of his motion reveals it was actually brought under section 2-615 of the Code (735 ILCS 5/2-615 (West 2004)). We need not make this determination because our analysis remains the same regardless of which Code section more aptly characterizes Bruce's motion.

Sections 2-619 and 2-615 of the Code apply only to pleadings. 735 ILCS 5/2-619, 2-615

16

No. 1-05-3972, 1-06-0108,1-06-0531, 1-06-1665, Consol.

(West 2004); see also In re Marriage of Wolff, 355 Ill. App. 3d 403, 407 (2005) ("Section 2-619 applies only to the dismissal of pleadings"); In re Marriage of Sutherland, 251 Ill. App. 3d 411, 414 (1993) ("[S]ection 2-615 applies only to the dismissal of pleadings"). A motion for Rule 137 sanctions is not a pleading and, thus, is not capable of being stricken under either section. William J. Templeman Co. v. Liberty Mutual Insurance Co., 316 Ill. App. 3d 379, 388 (2000). Accordingly, the trial court's order granting Bruce's motion was necessarily an order denying Lisa's motion for sanctions. See, e.g., Sutherland, 251 Ill. App. 3d at 414 (holding that the trial court order granting the husband's motion to strike his wife's motion to reconsider was really an order denying the wife's motion because a motion to reconsider is not a pleading capable of being stricken under section 2-615 of the Code). Although the description of the trial court's order was erroneous, this alone does not require reversal and remand for briefing, argument, and an evidentiary hearing as Lisa requests. See Sutherland, 251 Ill. App. 3d at 414. Because Lisa does not argue that her motion for Rule 137 sanctions has merit, we need not address this issue on appeal. 210 Ill. 2d R. 341(h)(7) (points not argued on appeal are waived).

Next, Lisa asserts that the trial court made a clerical error when it allocated the proceeds of a 401(k) plan entirely to Bruce. She urges us to use our authority under Supreme Court Rule 366(a)(5) (155 Ill. 2d R. 366(a)(5)) to correct the error and allocate 50% of the plan's proceeds to her.

In the trial court's September 2, 2005, judgment of dissolution of marriage, the trial court listed the assets contained in the Nesbitts marital estate and provided notations beside those assets previously divided between the parties pursuant to stipulations and agreed orders. At one point

17

No. 1-05-3972, 1-06-0108,1-06-0531, 1-06-1665, Consol.

the court correctly characterizes an Orion 401(k) plan valued at $3,077 as a marital asset to be distributed by the trial court but later incorrectly includes the plan under a column of items previously allocated to Bruce by virtue of prior agreements. Accordingly, the trial court did not allocate the proceeds of the plan equally between the parties as it did with the remainder of the marital property that had not been previously distributed.

Bruce does not dispute the trial court's error or that the trial court would have disposed of this asset equally between the parties. He only argues that Lisa should have raised this issue in the trial court. While we agree that Lisa should have raised this issue earlier, we acknowledge that Rule 366(a)(5) (155 Ill. 2d R. 366(a)(5)) permits this court to correct errors and "enter any judgment and make any order that ought to have been given or made" even when the error was not raised in the trial court. See, e.g., In re Marriage of Alexander, 368 Ill. App. 3d 192, 205 (2006). Accordingly, because there is no dispute as to the asset's value or the trial court's intent to distribute marital assets equally between the parties, we order that 50% of the $3,077 Orion 401(k) plan be allocated to Lisa.

Affirmed as modified.

THEIS, J., and CUNNINGHAM, J., concur.

18