2024 IL App (1st) 231988-U

THIRD DIVISION
April 9, 2025

No. 1-23-1988

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

**IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT**

| | |
|---|---|
| IN RE PARENTAGE OF:<br>Z.B.M., | ) Appeal from the<br>) Circuit Court of<br>) Cook County<br>) |
| | ) |
| MARC BUSHALA, | ) No. 2017 D 80489 |
| | ) |
|     Plaintiff-Appellant, | ) |
|  v. | ) |
| | ) |
| REBECCA JOY MCADAMS, | ) |
| | ) |
|     Defendant-Appellee, | ) |
| | ) |
| ROSENFELD/FARMER, | ) Honorable |
| | ) Regina Scannicchio, |
|     Appellee. | ) Judge, Presiding. |

JUSTICE D.B. WALKER delivered the judgment of the court.
Justice Reyes and Justice Martin concurred with the judgment.

**ORDER**

¶ 1     *Held*: We affirm the trial court's order granting appellee's petition for contribution to attorney fees where the statute does not prohibit a contribution to final fees requested by an attorney, and the trial court did not abuse its discretion in awarding attorney fees.

¶ 2    Plaintiff Marc Bushala (Marc) appeals the trial court's judgment granting appellee Rosenfeld/Farmer's (R/F) petition for final attorney fees in the amount of $453,430.38 against defendant Rebecca Joy McAdams (Joy) and for contribution to those fees from Marc. R/F had represented Joy in the proceedings. On appeal, Marc contends that the trial court erred in granting the petition where (1) the Illinois Parentage Act of 2015 (Parentage Act) (750 ILCS 46/101 *et seq.* (West 2022)) prohibits contribution to final attorney fees; and (2) the court made no finding as to whether the fees incurred were reasonable. For the following reasons, we affirm.

¶ 3                            I. BACKGROUND

¶ 4    Marc filed for divorce from his wife in 2015. In 2016, Marc was in a relationship with Joy, but they never married. In August of 2016, Joy gave birth to Z.B.M. On October 10, 2017, Marc filed a petition against Joy to establish parentage of Z.B.M., to allocate parenting time and parental responsibilities, and for other relief. At the time, both parties lived in Chicago. In his petition, Marc alleged that Joy planned to move with Z.B.M. to LaGrange, Illinois. He objected to the move because it would make joint parenting of Z.B.M. more difficult for the parties.

¶ 5    In response to the petition, Joy alleged that she was Z.B.M.'s primary caregiver and that Marc only requested substantial overnight time with Z.B.M. after the parties ended their relationship. Joy alleged that in the spring of 2017, Marc informed her that he would no longer provide housing for her. Since Marc planned to sell the residence, Joy was required to move but she could not afford to reside in Chicago. Joy admitted that she and Z.B.M. had moved to LaGrange. She requested that the court deny Marc's petition.

¶ 6    Meanwhile, the law firms that had represented Joy in the proceedings filed fee petitions against her. The first firm, Griffin McCarthy & Rice, filed a petition for $14,367.06 in fees.

O'Connor Family Law was subsequently substituted for Griffin on behalf of Joy. On December 22, 2017, O'Connor filed a petition seeking $9205.80 that Joy already incurred, as well as $50,000 in interim fees. The petition alleged that Marc ceased paying Joy's expenses, thus requiring her to incur significant litigation expenses. According to the petition, Joy's income was $150,000 per year in 2015, and Marc's income was $2,000,000.

¶ 7 Marc filed a response, claiming that he lacked resources to pay Joy's fees due to his pending divorce and the resulting child support payments and expenses. He alleged that Joy had the resources to purchase a house in LaGrange with a $140,000 down payment and a $450,000 mortgage.

¶ 8 The trial court ordered the parties to mediate their parenting issues. On January 17, 2018, Marc filed an emergency motion for temporary relief. Therein, he alleged that Joy's actions had prevented him from having reasonable parenting time with Z.B.M. Marc claimed that Joy moved to LaGrange two weeks prior to their mediation session, and upon her relocation, she "unilaterally rejected Marc's schedule for parenting time with [Z.B.M.] that had been in place for the previous six weeks and demanded that Marc drive to LaGrange and stay in her neighborhood *** with [Z.B.M.]" He alleged that Joy made "systematic and unilateral decisions" that limited his time with Z.B.M. from five days per week to two days.

¶ 9 On January 30, 2018, the court granted Marc's motion for substitution of judge as a matter of right. The parties also filed discovery motions, with responding motions challenging the other party's discovery requests. Joy filed a petition for child support, contribution to Z.B.M.'s expenses, and other relief. She also filed a petition for interim attorney fees.

¶ 10 The trial court's order of March 21, 2018 addressed some of these issues. The order set a schedule for the parties regarding their parenting time with Z.B.M. and granted Joy temporary

child support in the amount of $3293.50 per month. The order also allocated Z.B.M.'s daycare expenses and his uninsured and unreimbursed medical, dental and optical expenses between the parties. The court awarded Joy interim fees in the amount of $25,000[1] to be paid by Marc.

¶ 11    On May 1, 2018, Weiss Kunz & Oliver moved to substitute for O'Connor on behalf of Joy. Through the remainder of the year, the parties continued to file motions regarding the parenting schedule and discovery.

¶ 12    On December 21, 2018, Joy filed a petition for interim attorney fees and costs. She alleged that Marc will "continue to litigate until [she] cannot financially sustain [the] litigation because of the mounting attorney and expert fees." She alleged that Marc had threatened to "bury" her in litigation. Marc opposed the petition. Through filings, the parties continued their dispute over Z.B.M.'s parenting schedule and expenses. In its February 14, 2019 order, the trial court addressed some of the discovery issues and denied Joy's motion for interim and prospective fees.

¶ 13    On March 18, 2019, R/F filed an appearance on behalf of Joy. On July 15, 2019, Joy filed an emergency motion asking the court to bar all expert witnesses and name a new guardian *ad litem* (GAL). She alleged that the representative of Marc's other children in his divorce case sent an undisclosed letter to the GAL that praised Marc and suggested that Marc be given substantial parenting time with Z.B.M. Joy alleged that the GAL had been tainted by the letter. Marc opposed the motion.

¶ 14    Joy filed a petition for interim and prospective attorney and expert fees on August 7, 2019. She alleged that she was unable to pay her fees. Joy requested that the court determine the amount

---

[1]    Marc's brief stated that the order granted $35,000 in interim fees. However, the record shows that the court granted $25,000.

of fees paid by Marc and order Marc to pay R/F an equivalent sum or $163,900, whichever is greater. Marc opposed the fee petition. The trial court continued the matter to the trial.

¶ 15    The parentage trial took place over 11 days from September 2019 to December 2019. Marc, Joy, the GAL, the court-appointed evaluator, Marc's expert witness and Joy's expert witness testified at the trial. Since Marc explicitly states in his brief that he does not challenge the trial court's substantive determinations, we need not set forth the testimony presented at the trial. Relevant here, the court received evidence regarding the parties' income and financial resources, including their income tax returns, paystubs, bank and retirement statements, and financial affidavits. The trial court ordered the parties to submit written closing arguments.

¶ 16    Prior to the trial court's ruling, Marc filed a motion to modify or abate his temporary support. He alleged that the COVID-19 pandemic significantly curtailed his income. Joy filed a petition for rule to show cause against Marc for his alleged failure to pay support for April of 2020.

¶ 17    On May 8, 2020, Joy filed a petition for contribution to her attorney fees against Marc. Joy alleged that she earns approximately $140,000 per year plus a discretionary annual bonus of $10,000. She owns a home with a $404,000 mortgage and does not own a vehicle. She also has retirement accounts valued at approximately $240,000. Joy incurred debt in the amount of $77,525.87 to retain attorneys and experts in this matter. She also owed her parents more than $75,000 for funds they advanced to pay her prior fees.

¶ 18    Joy alleged that Marc's income is in excess of $600,000 according to his financial affidavit. Tax returns showed that he reported an income in 2018 in excess of $720,000. His balance sheet shows assets of more than $6.2 million with no reported credit card debt. He also resides in a house worth over $1.7 million and has nominal household expenses. Joy alleged that Marc owns luxury

vehicles and lives a "very high lifestyle." She requested that the trial court order Marc to contribute to her outstanding attorney fees in the amount of $424,288.13.

¶ 19    On July 6, 2020, Joy filed a motion to modify the court's September 25, 2018 order. She alleged that she needed to alter the parenting exchange schedule, but Marc refused to accommodate her. Marc responded that Joy was merely making it difficult for him to see Z.B.M. On September 8, 2020, the court ordered that Joy would pick up Z.B.M. from Marc's residence on Sundays and Marc would pick him up from Joy's residence on Wednesdays.

¶ 20    On October 22, 2020, R/F was granted leave to withdraw as Joy's attorney. A week later, R/F filed its petition for final attorney fees and costs against Joy. The petition set forth the hourly rates of the attorneys working on Joy's case and stated that the fees requested were "reasonable and necessary given the nature, complexity and duration of the case." Joy had already paid the firm $10,000 and owed $453,430.38. R/F's petition also sought a contribution award against Marc "in an amount the Court deems reasonable and appropriate which may be the entire amount of $453,430.38."

¶ 21    Marc filed a responsive memorandum opposing R/F's petition. He argued that the petition should be denied where: "(1) Joy's desire for frivolous litigation has unnecessarily and exponentially increased her attorneys' fees; (2) Joy refus[ed] to settle the case despite Marc's repeated attempts to do so over the protracted two and a half years of litigation; (3) Joy has sufficient financial resources to pay her attorneys' fees; and (4) Marc does not have the financial ability to contribute to Joy's fees." Marc argued that Joy had already paid a total of $256,054.75 in attorney and expert fees, and this prior payment further demonstrated her ability to pay R/F's fees. He requested that the court also deny R/F's request for contribution.

¶ 22    On December 29, 2020, the trial court entered its judgment regarding the parties' parenting schedule and financial support for Z.B.M. The parties do not challenge this order on appeal.

¶ 23    A hearing on R/F's fee petition took place over seven days from December 14, 2021 to May 19, 2022. The court stated that it was "very familiar with these proceedings, having presided over a multi-day trial in the underlying parentage action."

¶ 24    At the hearing, the parties first addressed the reasonableness of R/F's fees. Joy testified that the billing statements accurately set forth the work performed in the case. Howard Rosenfeld testified regarding the work his firm performed and the attorneys' hourly rates. The trial court had in its possession the engagement agreement, detailed billing statements and time records.

¶ 25    Marc's counsel cross-examined Mr. Rosenfeld on issues including whether Joy told her attorneys to include Marc's girlfriend and business partners as witnesses at the parentage trial, whether the billing of work performed for Joy was accurate, how much money the firm expended to "get[] up to speed" in Joy's case, and the number of trial stipulations agreed to by Joy.

¶ 26    Marc's counsel also asked Mr. Rosenfeld about settlement letters drafted in the case. Joy's counsel objected, and Marc's counsel argued that the letters were relevant to the reasonableness of Joy's litigation fees. The court found that counsel's request to admit the letters would require the court "to go into the nature of the settlement and into the nature of the proceedings that have already been ruled on." Relying on Rule 408 of the Illinois Rules of Evidence, the trial court sustained the objection. However, it allowed Marc's counsel to make an offer of proof. The offer consisted of letters written on Joy's behalf requesting a $1.3 million home in Chicago, $5000 per month as support, and payment for a nanny, private school and all of Z.B.M.'s medical expenses.

¶ 27    Shaska Dice, an attorney who worked on Joy's case at R/F, also testified at the hearing. Dice was "the primary point person dealing with [Joy.]" She was responsible for all aspects of case

management, including drafting pleadings and routine court appearances. She testified that the time records accurately reflected the time she billed for her work. Dice stated that the time she billed "was reasonable and necessary."

¶ 28    On cross-examination, Dice acknowledged that the case was "all-consuming." Marc's counsel asked Dice "how often" Joy communicated with her, and whether Joy was "a more demanding client than others." Dice was not surprised that the billing statements showed she was in communication with Joy "nearly every single day," but admitted that she did not bill for all of her time on Joy's case. Dice denied that she performed work for Joy's family members that she billed in Joy's case. Marc's counsel also examined Dice on her billing practices and whether Joy was willing to enter a payment plan to pay the amount she owed to R/F. Dice responded that Joy wanted to make payments but was "unable to do so *** while the petition for contribution was pending." On redirect, Dice stated that to her knowledge, Joy did not have access to sufficient funds to pay her attorney fees.

¶ 29    Marc testified that he owed his attorneys $400,000 and thought he had paid $100,000. He did not believe his attorneys' fees were unreasonable. Marc's counsel testified that Marc had paid $378,000 and owed $511,366.03.

¶ 30    Regarding the contribution portion of the hearing, Marc acknowledges on appeal that he "is not contesting the court's findings with regard to the respective abilities of the parties to pay." Therefore, we will not set forth in detail the financial evidence and testimony presented on this issue. At the hearing, the parties presented evidence of their sources of income, their debts, the amount of income received through employment and investments, Marc's maintenance and support obligations pursuant to his divorce, trusts in which Marc is a beneficiary, property owned by the parties, and legal fees owed to their respective attorneys.

¶ 31    On June 1, 2023, the trial court entered a judgment on R/F's petition for final attorney fees and Marc's contribution to those fees. In the written order, the court stated that it made its determination after having "reviewed all relevant pleadings and pertinent case law, statutes, and court rules; and having heard the sworn testimony of the parties and assessing the credibility of each witness and having heard arguments of counsel; the matter proceeding over the course of seven days of trial, and otherwise being fully advised in the premises."

¶ 32    The order stated that the petition for final fees was filed pursuant to section 508(c)(3) of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/508(c)(3) (West 2022)). The court found that R/F had a valid engagement agreement with Joy, as required by section 508(c). The court further found that "Rosenfeld/Farmer provide[d] legal services to Joy in accordance with the engagement agreement and Joy has not contested the fairness, reasonableness, or necessity of R/F's fees." The order stated that "[t]he main issue here is how much of R/F's fees each party will be responsible for paying."

¶ 33    Citing *In re Rocca*, 2013 IL App (2d) 121147 (*Rocca II*),[2] the trial court noted that in a parentage action, the applicability of section 503(j) of the Marriage Act, which provides for a hearing on a party's petition for contribution of fees and costs, "is unclear." Following *Rocca II*, the trial court found that if section 503(j) was applicable, it must consider "the economic circumstances of both parties in its analysis."

¶ 34    The trial court considered "the monthly expenses, net income, real estate ownership, and investments of both parties." The court found that requiring Joy "to pay the entire payment of

---

[2]  The matter in *In re Rocca*, 408 Ill. App. 3d 956 (2011) (*Rocca I*) was remanded for the trial court to consider the attorney's petition for contribution, and the appeal after remand was decided in *Rocca II*. Here, the trial court's citation to *Rocca II* is actually the appellate court's reference in that case to its decision in *Rocca I*.

R/F's fees would threaten her financial stability. *** While Joy makes a substantial living, she does not have the ability to pay R/F's fees in full without significantly impacting her financial stability. Meanwhile, Marc has considerably more financial resources and has the financial ability to contribute to some portion of R/F's fees."

¶ 35    The trial court noted, however, that Joy "has experienced a recent rise in her financial capabilities and chose to prioritize repayment of other debt and payment of her current attorneys over R/F." The court found that Joy "has the ability to pay for a majority of R/F's fees reflecting 75% of R/F's fees, and Marc shall contribute 25% toward R/F's outstanding legal fees." The trial court granted R/F's petition for final attorney fees and costs and awarded the firm $340,072.78 from Joy and $113,357.60 from Marc as his contribution. Marc was ordered to pay his share "on or before 120 days from the date of this order."

¶ 36    Marc filed a motion to reconsider, arguing that the amount of his contribution was against the manifest weight of the evidence, the trial court had no authority to require him to pay by a certain date, and he should only have to pay his contribution "if and when [Joy] pays her share to R/F." The trial court denied the motion. The court found that it had followed the law by considering the parties' incomes, monthly expenses, net income, real estate ownership and investments. It further found that section 508(c) did not prohibit the court from requiring payment of attorney fees by a certain date. The court concluded that it did not misapply the law, and Marc filed this appeal.

¶ 37                                    II. ANALYSIS

¶ 38    On appeal, we first consider Marc's argument that section 503(j) has no application in a parentage action and therefore, the court had no authority to award a contribution to final fees in this case. Joy argues that Marc forfeited review of this issue because he did not raise it before the

trial court or in his motion for reconsideration. Marc responds that the trial court's order stated that the application of section 503(j) to parentage actions "is unclear." He contends that he could not forfeit the issue where the "trial court itself addressed [it] in writing in its order."

¶ 39 The trial court below, however, did not find that there can be no contribution claim in parentage cases. Rather, the court was merely repeating the finding in *Rocca II*. That case, and its companion, *Rocca I*, did not find it "unclear" whether the trial court had statutory authority to order contribution to attorney fees in a parentage action.

¶ 40 Section 809 of the Parentage Act provides that the trial court "may order, in accordance with the relevant factors specified in Section 508 of the [Marriage Act,] reasonable fees of counsel, experts, and other costs of the action *** to be paid by the parties." 750 ILCS 46/809(a) (West 2022). Section 508(a), in turn, provides that "[a]t the conclusion of any pre-judgment dissolution proceeding under this subsection, contribution to attorney's fees and costs may be awarded from the opposing party in accordance with subsection (j) of Section 503 and in any other proceeding under this subsection." 750 ILCS 5/508(a) (West 2022). This directive to other provisions of the statute is considered a relevant factor. *In re Stella*, 353 Ill. App. 3d 415, 420 (2004).

¶ 41 The court in *Rocca I* found that although section 508(a) clearly required that a contribution award in a *dissolution* proceeding follow section 503(j), it was unclear whether contribution in a *parentage* action must be awarded "in accordance with" section 503(j). (Emphasis added.) *Rocca I*, 408 Ill. App. 3d at 965 n.3 (finding it "unclear whether 'in any other proceeding,' *i.e.*, a nondissolution proceeding, contribution awards must follow section 503(j)'s parameters"). Without making a definitive determination, the court in *Rocca II* found that if section 503(j) did apply to parentage actions, a court considering contribution must "include an assessment of the

economic circumstances of *both* parties." (Emphasis in original.) *Rocca II*, 2013 IL App (2d) 121147, ¶ 17.

¶ 42   Thus, neither *Rocca I* nor *Rocca II* held that the provision could be construed as prohibiting contribution to a party's final attorney fees altogether in parentage cases. To the contrary, the court in *Rocca I* found that section 508(a) of the Marriage Act, the provision through which the trial court has authority to award attorney fees in parentage actions, "clearly contemplates: (1) contribution of fees from one party to another party; (2) a contribution award that is payable directly to the attorney and that the attorney may personally enforce; and (3) that a former attorney may petition for final fees." *Rocca I*, 408 Ill. App. 3d at 965.

¶ 43   In its written order, the trial court below merely repeated *Rocca II*'s finding that *the application of section 503(j)'s parameters* to contribution in parentage actions is unclear, but if they did apply, the court must consider the economic positions of both parties. The trial court then proceeded to consider those factors. As such, the trial court did not address the broader issue of whether a statutory basis exists for awarding contribution to final attorney fees in a parentage action, which is Marc's contention on appeal. "[A]n issue not presented to or considered by the trial court cannot be raised for the first time on review." *Daniels v. Anderson*, 162 Ill. 2d 47, 58 (1994). Nevertheless, as set forth above, the court in *Rocca I* answered that question in the affirmative.

¶ 44   In this case, the trial court determined, after examination of the relevant economic factors, that Joy was "unable to pay for all of the legal costs attributed to R/F's representation of her" and that "Marc has the financial ability to contribute towards her legal fees." Accordingly, the court granted R/F's petition for final fees and costs, awarding 75 percent of R/F's requested fees, or $340,072.78, against Joy, and awarding 25 percent, or $113,357.60, against Marc as his

contribution to the fees. On appeal, Marc does not challenge "the court's findings with regard to the respective abilities of the parties to pay" R/F's fees and costs. Therefore, we affirm the trial court's decision to award contribution of 25 percent towards Joy's fees against Marc.

¶ 45     However, Marc does dispute the reasonableness of R/F's fees awarded by the trial court. He argues that the court abused its discretion when it granted R/F's petition for the full amount requested, and ordered Marc to contribute $113,357.60 toward that amount, but failed to determine whether the amount requested was reasonable. We will not disturb the trial court's decision to award attorney fees absent an abuse of discretion. *In re Marriage of Heroy*, 2017 IL 120205, ¶ 13. An abuse of discretion occurs when the trial court's determination is arbitrary, fanciful, unreasonable, or where no reasonable person would take the trial court's view. *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009).

¶ 46     Section 809(a) of the Parentage Act authorizes the trial court to order, "in accordance with the relevant factors specified in Section 508 of the [Marriage Act], reasonable fees of counsel *** to be paid by the parties." 750 ILCS 46/809(a) (West 2022). Section 508(a) of the Marriage Act states that "contribution to attorney's fees and costs may be awarded from the opposing party in accordance with subsection (j) of Section 503 ***." 750 ILCS 5/508(a) (West 2022). Section 503(j) provides, in relevant part, that

> "a party's petition for contribution to fees and costs incurred in the proceeding shall be heard and decided, in accordance with the following provisions:
>
> ***
>
> (2) Any award of contribution to one party from the other party shall be based on the criteria for division of marital property under this Section 503 and, if maintenance has been

awarded, on the criteria for an award of maintenance under Section 504." 750 ILCS 5/503(j) (West 2022).

¶ 47    Although there is no express requirement that a contribution award be reasonable, this court has construed section 503(j) of the Marriage Act as incorporating a reasonability requirement. *In re Marriage of Hasabnis*, 322 Ill. App. 3d 582, 596 (2001); *In re Nesbitt*, 377 Ill. App. 3d 649, 657 (2007). In *Hasabnis*, the court found that section 503(j) did not state whether the trial court "can or must consider such other matters as billing records and the reasonableness of the fee charged by the petitioner's attorney." *Hasabnis*, 322 Ill. App. 3d at 596. However, the court found no language preventing the consideration of billing records or the reasonableness of attorney fees if they constituted competent and relevant evidence. *Id*. It also found that nothing in section 503(j) required consideration of such evidence. *Id*.

¶ 48    The court further determined that although the trial court did not require production of the billing records, nor did it explicitly find the fees reasonable, it had clearly considered the reasonableness of the fees. *Id*. at 596-97. It found that the trial court properly considered the facts of the case and weighed the factors in sections 503 and 504 of the Marriage Act regarding the division of marital property and awarding of maintenance. *Id*. at 596.

¶ 49    The court in *Nesbitt*, citing *Hasabnis*, found that the trial court need not examine all of the billing records when awarding contribution under section 503(j). *Nesbitt*, 377 Ill. App. 3d at 658. It determined that nothing in *Hasabnis* required the trial court to find that "all of the fees incurred" were reasonable in awarding contribution. *Id*. at 659. Nonetheless, the trial court in *Nesbitt* had conducted "an extensive hearing where much of the testimony concerned the reasonableness of" the petitioner's attorney fees. The petitioner provided billing statements with some time sheets. *Id*. at 658. The trial court also considered the marital property criteria in section 503 and the

maintenance criteria under section 504. *Id*. After considering this evidence, the trial court awarded $700,000 of the $988,358 in attorney fees the petitioner requested. *Id*. at 659. Although the trial court did not explicitly find that all of the work performed was reasonable, it reduced the fee award based on knowledge it acquired after an exhaustive hearing on the fee issue. *Id*. The appellate court found that the trial court did not abuse its discretion, and it affirmed the contribution award. *Id*.

¶ 50    Although *Hasabnis* and *Nesbitt* held that a contribution award under section 503(j) must be reasonable, these cases did not decide whether, as part of the reasonableness determination, the trial court must also consider and make a finding as to the reasonableness of the attorney fees incurred. *Hasabnis* and *Nesbitt* did not reach the issue because in each case, this court determined that the trial court did in fact consider the reasonableness of the fees. An appellate court in the second district, however, found that "in making an award of attorney fees pursuant to a petition for contribution to attorney fees, the trial court must also consider whether the attorney fees charged by the petitioning party's attorney are reasonable." *In re Marriage of DeLarco*, 313 Ill. App. 3d 107, 114 (2000); see also *In re Marriage of Goodman*, 2019 Il App (2d) 170621-U, ¶ 188[3] (finding that the trial court's decision to award contribution under section 503(j) was an abuse of discretion because the petitioner "failed to present evidence sufficient to assess the reasonableness of the fees she requested").

¶ 51    Furthermore, *Hasabnis* and *Nesbitt* are cases where one party to the dissolution proceeding sought contribution from a spouse. As our supreme court explained, the legislature enacted section 503 "to facilitate an equitable distribution of marital property" when a marriage is dissolved. *In re*

---

[3]   This case is an unpublished order pursuant to Illinois Supreme Court Rule 23(b) (eff. July 1, 2011). However, we are not citing the case for persuasive or precedential purposes. Rather, we cite it as an example of courts that found the reasonableness of attorney fees relevant to the determination of a contribution award.

*Marriage of Mathis*, 2012 IL 113496, ¶ 26. Contribution awards under section 503(j) serve to level the playing field in divorce proceedings. *Heroy*, 2017 IL 120205, ¶ 17. Section 503(j) allows attorney fees to be " 'taken from the assets to be given to the disadvantaged spouse so that they can have proper representation.' " *Id*. quoting 89th Ill. Gen. Assem., Senate Proceedings, Dec. 5. 1996, at 25-26 (statements of Senator Parker). To further this purpose, section 503(j) directs the trial court to consider statutory criteria for dividing marital property and, if maintenance is awarded, criteria for awarding maintenance. See 750 ILCS 5/503(j)(2) (West 2022). A reasonable contribution award in this context necessarily considers factors other than the fees themselves to effectuate the overall purpose of section 503. "In most cases, once the trial court has weighed marital property criteria and, if awarded, maintenance criteria, it will have enough of a record to determine the contribution amount." *Hasabnis*, 322 Ill. App. 3d at 596.

¶ 52    In this case, contribution was awarded not in a dissolution proceeding, but in a parentage proceeding where the parties were never married and therefore held no marital property. This court has found section 503(j) to be applicable in parentage proceedings. See *In re J.W.*, 2017 IL App (2d) 160554, ¶ 44; *In re F.R.*, 2023 IL App (1st) 220216-U, ¶¶ 8-9. However, it is clear that the concerns regarding the equitable distribution of marital property upon termination of the marriage, and section 503(j)'s corresponding provisions directing the court to consider the statutory criteria for dividing marital property and maintenance, are inapplicable here. As such, the amount and reasonableness of attorney fees owed necessarily plays a more vital role when determining a reasonable contribution amount in parentage proceedings. We have found no cases directly addressing whether the trial court must consider and make a finding as to the reasonableness of attorney fees when ruling on a claim for contribution in a parentage action.

¶ 53 Moreover, the trial court below awarded contribution pursuant to R/F's fee petition. In its petition, R/F sought contribution from Marc for payment of attorney fees owed by Joy. An appropriate attorney fee consists of reasonable charges for reasonable services. *In re Marriage of Patel & Sines–Patel*, 2013 IL App (1st) 112571, ¶ 103. It is well-established that R/F, as the law firm seeking fees, bears the burden of establishing the reasonable value of its services. *In re Estate of Callahan*, 144 Ill. 2d 32, 43-44 (1991). We have found no cases where the attorney seeking fees was allowed to bypass this burden when requesting contribution from the opposing party, simply because the attorney's client did not challenge the reasonableness of the fees. Since R/F sought payment of its fees, the firm must establish the reasonableness of its fees on its claim for contribution. Likewise, since R/F sought contribution from Marc, Marc properly challenged the reasonableness of R/F's fees. It follows that, in this context, the trial court must consider the reasonableness of the attorney fees requested.

¶ 54 Although Marc contends that the trial court in this case failed to consider the reasonableness of R/F's attorney fees, the record shows that the court did consider the issue. We recognize that the trial court's written order stated only that "Joy has not contested the fairness, reasonableness, or necessity of R/F's fees," and the court did not make an express finding of reasonableness. However, the court was "very familiar with these proceedings, having presided over a multi-day trial in the underlying parentage action." Its written order also made clear that the court had "reviewed all relevant pleadings and pertinent case law, statutes, and court rules," heard the testimony of the parties and assessed the credibility of the witnesses, heard the arguments of

counsel, and was "otherwise being fully advised in the premises." Therefore, we can infer from the record that the trial court considered the reasonableness of R/F's fees.[4]

¶ 55    Marc next contends that the trial court's determination requiring him to pay $113,357.60 of the fees was against the manifest weight of the evidence where "Joy's desire for frivolous litigation has unnecessarily and exponentially increased her attorneys' fees." On this point, R/F responds that "neither party contested the reasonableness of the actual fees charged." Rather, Marc only asserted that "Joy's actions in incurring the fees were unreasonable ***."

¶ 56    However, whether a party unnecessarily increases the cost of litigation is a relevant factor in the allocation of attorney fees. *Patel*, 2013 Il App (1st) 112571, ¶ 117. Therefore, the trial court may hear and consider evidence regarding the conduct of the client and the opposing party in incurring attorney fees. See *In re Marriage of Kane*, 2016 IL App (2d) 150774, ¶ 12 (the trial court denied the attorney's petition for contribution from the opposing party, finding that most of the work performed by the attorney was not necessary or reasonable because the attorney encouraged his client's " 'rogue behavior *** which did nothing to control the litigation' "); see also *Nesbitt*, 377 Ill. App. 3d 649, 655-56 (2007) (the trial court ordered the opposing party to contribute $700,000 to the $988,385 in attorney fees requested where both parties engaged in litigious conduct, and the court found that the opposing party " 'protracted the litigation out of sheer vindictiveness' ").

---

[4]    Although the trial court did not explicitly find that R/F's fees were reasonable, we believe the parties would be better served by such a finding. We recognize that parentage cases subject to these attorney fee and contribution provisions, like the one before us, often involve high tension and emotion, with the additional concern of apportioning the payment of attorney fees between the unmarried parties. A trial court can provide clarity to the parties regarding the basis of its decision by first finding the amount of attorney fees it deems reasonable and necessary to the proceedings, and then allocating an appropriate contribution amount.

¶ 57　The trial court, as the trier of fact, is in a superior position to observe the demeanor of the witnesses while testifying, to judge their credibility and to determine the weight their testimony and other evidence should receive. *Wildman, Harrold, Allen & Dixon v. Gaylord*, 317 Ill. App. 3d 590, 599 (2000). Therefore, the trial court's finding "is against the manifest weight of the evidence only if the opposite conclusion is clearly evident or if the finding itself is unreasonable, arbitrary, or not based on the evidence presented." *Best v. Best*, 223 Ill. 2d 342, 350 (2006).

¶ 58　The trial court heard extensive testimony during the multi-day hearing on R/F's fee petition. R/F's attorneys testified regarding the work they performed in Joy's case and their hourly rates. The engagement agreement between R/F and Joy, as well as detailed billing statements and time records, were submitted. Marc's counsel extensively questioned Mr. Rosenfeld and his associate about the work they performed and the time they spent on Joy's case. Counsel argued that Joy was a difficult client. Both parties also testified at the hearing and were subject to cross-examination.

¶ 59　The reasonableness of R/F's fees, given Joy's conduct, was clearly an issue before the trial court. The court heard testimony, reviewed evidence, and assessed the credibility of the witnesses. Significantly, the trial court limited Marc's contribution amount to 25 percent when Joy requested in her petition that Marc "pay and/or contribute to" the full amount of the attorney fees she owed to R/F. Therefore, the court apparently considered, and gave some weight to, Marc's arguments. We cannot say that the opposite conclusion was clearly evident, or that the trial court's finding was unreasonable, arbitrary or not based on the evidence. Therefore, we affirm the trial court's determination.

¶ 60　Marc also argues that he should not have to contribute to attorney fees because he rightfully rejected Joy's unreasonable settlement proposals. He contends that the trial court should have

admitted Joy's offers during settlement negotiations where the evidence was highly relevant to the issue of Joy's and R/F's unreasonable conduct during the litigation.

¶ 61    It is well-established that evidence must be relevant to be admissible. *Elder on Behalf of Finney v. Finney*, 256 Ill. App. 3d 424, 427 (1993). Evidence is relevant if it tends to make the existence of a material fact more or less probable than it would be without the evidence. *Id*. The trial court has discretion to determine the relevance and admissibility of evidence, and a reviewing court will not disturb that determination absent a clear abuse of that discretion. *In re Marriage of Bates*, 212 Ill. 2d 489, 522 (2004). An abuse of discretion occurs where no reasonable person would take the position adopted by the trial court. *Peach v. McGovern*, 2019 IL 123156, ¶ 25. Furthermore, for this court to overturn the trial court's decision, the erroneous evidentiary ruling must have substantially prejudiced the complaining party. *Wojcik v. City of Chicago*, 299 Ill. App. 3d 964, 971 (1998).

¶ 62    In finding the evidence inadmissible, the trial court below relied on Rule 408(a) of the Illinois Rules of Evidence, which states:

> "Evidence of the following is not admissible on behalf of any party, when offered to prove *** [the] amount of a claim that was disputed as to validity or amount ***:
>
> > (1) furnishing or offering or promising to furnish—or accepting or offering or promising to accept—a valuable consideration in compromising or attempting to compromise the claim; and
> >
> > (2) conduct or statements made in compromise negotiations regarding the claim." IL R. Evid. 408(a)(1), (2) (eff. Jan. 1, 2011).

¶ 63    In general, evidence of settlement negotiations is inadmissible. *Wilson v. Moon*, 2019 IL App (1st) 173065, ¶ 44. Marc argues, however, that this general rule does not apply when

settlement offers were inconsistent with the party's litigation position, or when the offers demonstrate a party's bad faith, citing *Stathis v. Geldermann Securities, Inc.*, 295 Ill. App. 3d 845 (1998) and *Shimkus v. Board of Review*, 117 Ill. App. 3d 826 (1983). He contends that the settlement negotiations showed Joy's inconsistency in arguing at trial that her move to La Grange with Z.B.M. was necessary and proper, while during settlement negotiations she offered to live in Chicago if Marc provided a $1.3 million house, tuition for private school, payment for a nanny, and $5000 per month in child support. He further argues that Joy's offers were unreasonable and contributed to the parties' inability to settle, thus increasing the amount of attorney fees.

¶ 64    First, we find no inconsistency in Joy's positions. She has always maintained that while living in Chicago would make co-parenting Z.B.M. easier, she could not afford to live in the city without assistance. Second, to the extent Marc wants this evidence admitted to prove that the amount of R/F's fees is unreasonable, such evidence is inadmissible pursuant to the plain language of Rule 408(a). Marc argues that an exception exists where Joy acted in bad faith during negotiations. However, all of the cases Marc cites in support are cases where the parties had entered a settlement agreement. See *Shimkus*, 117 Ill. App. 3d at 828-29, *Wreglesworth v. Arctco, Inc.*, 317 Ill. App. 3d 628, 632 (2000), and *Chaney v. National Steel Corporation*, 272 Ill. App. 3d 850, 853 (1995). Here, the parties never entered a settlement agreement and Joy was not legally obligated to settle. The court did not abuse its discretion in sustaining R/F's and Joy's objection to the evidence.

¶ 65                                    III. CONCLUSION

¶ 66    For the foregoing reasons, the trial court's judgment is affirmed.

¶ 67    Affirmed.